**UNITED STATES of America, Plaintiff,**

v.

**Mark Lewis SINGER, Oakley Bechtel Cline, III, Joseph Michael Sazenski, Arturo Augustin Izquierdo, and John Patrick Reynolds, Defendants.**

**Cr. No. 4–80–52.**

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 27, 1983.

---

James M. Rosenbaum, U.S. Atty., John M. Lee and Franklin L. Noel, Asst. U.S. Attys., Minneapolis, Minn., for plaintiff United States.

Ronald I. Meshbesher and Kenneth Meshbesher, Meshbesher, Singer & Spence, Ltd., Minneapolis, Minn., for defendant Mark Lewis Singer.

Bruce Hartigan, Minneapolis, Minn., for defendant Oakley Bechtel Cline, III.

Mark W. Peterson, Edina, Minn., for defendant Joseph Michael Sazenski.

Phillip S. Resnick, Resnick & Bartsh, P.A., Minneapolis, Minn., for defendant Arturo Augustin Izquierdo.

Ronald Chisolm, Boston, Mass., for defendant John Patrick Reynolds.

DIANA E. MURPHY, District Judge.

The above-named defendants are charged in the indictment with offenses related to an alleged conspiracy to possess and distribute a large quantity of marijuana. This matter is now before the court upon the motion of defendants for recusal pursuant to 28 U.S.C. § 455(a) on their motion to dismiss.

*Background*

This case was originally tried in December, 1980, with the Honorable Miles W. Lord, Chief Judge of the District of Minnesota, presiding. The jury found these defendants guilty of charges in the indictment. On appeal of the convictions, the

Eighth Circuit Court of Appeals, sitting *en banc,* stated the principal issue as "whether the District Court so far injected itself into the trial as to give the jury the impression that it favored the prosecution." *United States v. Singer,* 710 F.2d 431, 432 (8th Cir.1983). In the exercise of its "supervisory power over the administration of justice in this Circuit" (*id.*), it reversed the convictions and remanded for a new trial in the interests "of fairness and the appearance of fairness." *Id.* at 437. Judge Lord disqualified himself on remand, and the case was subsequently assigned to this court. Trial was scheduled to begin on September 14, 1983.

On or about September 7, 1983, Assistant United States Attorney John Lee sent to defendant Singer's counsel, Ronald Meshbesher, a set of materials consisting of copies of documents from Meshbesher's Singer defense file (the Meshbesher file). These materials included copies of attorney-client correspondence and memoranda on the case written by counsel for Singer. The file appears to consist entirely of documents prepared before the original trial of the case. The cover letter from Lee sent with the file stated that the materials came into the possession of the United States Attorney's office from a non-government source and that the government did not intend to introduce the materials into evidence in its case-in-chief at the new trial.

On September 13, 1983, defendant Singer filed a motion to dismiss the indictment on the basis of prosecutorial misconduct in obtaining the Meshbesher file. An evidentiary hearing on the motion was convened on September 14, at which time the other four defendants joined in the motion.

■ On the first day of the evidentiary hearing, Minneapolis Police Officer Ronald Johnson, the case agent assigned to the investigation of this case, testified that he received the Meshbesher file in the fall of 1982 from an informant. Johnson testified that the informant had received it from a non-government source without any participation by the government and it was his understanding that the file could establish the commission of a crime collateral to those charged in the indictment. Further questions by defense counsel regarding the identity of the informant and source of the documents were objected to by the government on the basis of the "informer's privilege." [1] The court then held an *in camera* hearing at which further testimony was given by Officer Johnson.

Following the *in camera* hearing, the court sustained the government's objection based on the informer's privilege. The court indicated, however, that defendants could continue their examination of Johnson into non-privileged matters and could call Assistant United States Attorney Daniel Schermer to testify when the evidentiary hearing reconvened on September 16. Schermer was the trial attorney at the original trial and still had responsibility for the case at the time the Meshbesher file was allegedly received.

Before the hearing reconvened on September 16, that day's edition of the *Minneapolis Star and Tribune* appeared with a front page article under the headline "File prompts Bouza and Lord to question Meshbesher conduct." The article stated in part:

> U.S. District Judge Miles Lord, who presided over that trial, said yesterday that the documents are significant enough to warrant an investigation by an outside prosecutor into whether Meshbesher allowed his witness to perjure himself. Lord said he had urged that that course be followed.
>
> \*    \*    \*    \*    \*    \*
>
> Bouza and Lord said they have not read the documents ... Lord said he was

---

1. The informer's privilege is in reality the government's privilege to withhold from disclosure the identity of persons who furnish information on violations of law to officers charged with the enforcement of that law. *Roviaro v.* *United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1956). "The purpose of the privilege is the furtherance and protection of the public interest in law enforcement." *Id.*

briefed by Sgt. Ron Johnson of the Minneapolis police.

\* \* \* \* \* \*

Lord said yesterday that he talked to Johnson about the perjury issue two weeks ago and afterwards told Rosenbaum that "in my opinion an outside prosecutor should be brought in to review the case."

Lord said, "It seemed to me, after review, that there was an obligation. After all, here was a prominent local attorney—Meshbesher—and an outside prosecutor should look at the issue and if there was something there, then an outside judge should also be brought in. I thought there was enough there to have someone from the outside come in and I didn't think we should be biased or prejudiced.

"If perjury was committed in my court I wanted to know," said Lord.

*See* attachment to Third Affidavit in Support of Motion to Dismiss Indictment, dated September 16, 1983.

The newspaper article published some of the information introduced at the *in camera* hearing, and defense counsel sought to inquire into it when the hearing reconvened. Also for the first time they raised questions concerning actions and comments of Judge Lord. This court indicated that the inquiry should be limited to facts surrounding the government's possession of the Meshbesher file and the motion to dismiss for prosecutorial misconduct. Evidence was received about meetings Schermer and Johnson had with Judge Lord about this case, but the court sustained objections to questioning about whether *ex parte* meetings were had prior to or during the original trial. Schermer did testify that he met with the Judge at the latter's request, sometime between the trial and Singer's sentencing. He testified

that the Judge stated the record on pending preindictment and pretrial delay issues was inadequate and that a memorandum and affidavit would be helpful. This court sustained the government's relevancy objection when defendants offered as an exhibit documents which were prepared as a result of that meeting. Johnson testified that he met with Judge Lord recently about the Singer case, at which time they discussed the Meshbesher file. There was also testimony that someone in the U.S. Attorney's office met with the Judge recently about the same papers.

The hearing was scheduled to reconvene on the afternoon of Tuesday, September 20. Coverage related to the hearing appeared on the September 17 front pages of both the *St. Paul Pioneer Press/Dispatch* and the *Minneapolis Star and Tribune.* *See* attachment to Third Affidavit in Support of Motion to Dismiss Indictment, dated September 21, 1983.

On the morning of September 20, the court received a letter from Judge Lord in which he stated in part:

... I suggest to you that if there are any questions about the *Singer* matter which should properly be answered by me, I will make myself available to testify and be cross examined about any aspect of the matter.

I am causing a copy of this letter to be delivered to both the U.S. Attorney and defense counsel so that there need be no speculation about my activities or motives in this regard.

*See* attachment to Affidavit in Support of Motion for Recusal dated September 20, 1983.

That afternoon, defendants brought the present motion for this court to recuse itself pursuant to 28 U.S.C. § 455(a) on the motion to dismiss.[2] Singer's memorandum states that he

---

2. Defendant Singer initially brought the motion. Counsel for defendants Cline, Izquierdo, and Sazenski indicated orally that they were joining in the motion. Counsel for defendant Reynolds was not present, but had previously indicated on the record that Reynolds wished to join in any motions brought by other defendants.

Singer also filed motions on the previous day for 1) return of defense confidential files and 2) disclosure and suppression of electronic surveillance and wiretapping.

... in no way actually claims this Court is not impartial, rather the essence of this motion is that the "appearance" of partiality may be present ... defendant seeks not merely another judge from this district ... Defendant will petition the Chief Judge of the Eighth Circuit, pursuant to 28 U.S.C. § 291(b) to "in the public interest", assign temporarily a circuit judge to hear this case, or request that pursuant to 28 U.S.C. § 292(d), the Chief Judge request the Chief Justice to make such assignment.

Defendants stated on the record that they wished to broaden their pending motion to dismiss to encompass any "governmental" misconduct. A supporting affidavit of Ronald Meshbesher claims that "because of the peculiar circumstances of this case involving allegations of gross misconduct on the part of the Chief Judge of this district ... it would be improper for any judge in this district .... [to rule] upon the issues involved in this motion." Defendants argue that they should now be able to inquire into whether there was prosecutorial misconduct and "intentional" misconduct or actual bias[3] on the part of the trial judge at the first trial. They claim such evidence could require dismissal of the indictment or raise the bar of double jeopardy. They have not cited any supporting authority directly on point.

The government argues in opposition that defendants' motion rests on their incorrect assertion that Judge Lord's conduct is an issue before the court. The government states that this court has "properly limited the inquiry on the Motion to the facts and circumstances surrounding the government's possession of the documents which originated in defense counsel's files." Testimony bearing on conduct at the first trial has been consistently excluded. The government concludes that no appearance of partiality can exist where the contested evidence is excluded because this court would then "have no occasion to con-sider or pass upon the propriety of the Chief Judge's conduct."

*Discussion*

■ The standard for disqualification is contained in the recusal statute, 28 U.S.C. § 455(a), which provides:

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

This section as amended in 1974 replaces the former "duty to sit" standard and requires the use of an objective standard of reasonableness in a judge's disqualification decision. *See United States v. Poludniak,* 657 F.2d 948, 954 (8th Cir.1981), *cert. denied,* 455 U.S. 940, 102 S.Ct. 1431, 71 L.Ed.2d 650 (1982); H.R.Rep. No. 93–1453, 93rd Cong., 2d Sess., reprinted in [1974] U.S.Code Cong. & Admin.News, 6351, 6355. Since the goal of the statute is to ensure not only actual impartiality, but also the appearance of impartiality, disqualification may be required even when there is no actual bias or prejudice. *Id.* "[The] appearance of impartiality is virtually as important as the fact of impartiality." *Webbe v. McGhie Land Title Co.,* 549 F.2d 1358, 1361 (10th Cir.1977).

In a leading case cited by the Eighth Circuit in *Poludniak,* the Fifth Circuit described the standard for disqualification in this manner:

[A] judge ... ought to consider how his participation in a given case looks to the average person on the street. Use of the word "might" in the statute was intended to indicate that disqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality.

*Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1111 (5th Cir.1980), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). "[T]he statute requires a judge to exercise his discretion in favor of disqualification if he has any question about the propriety of his sitting in a particular

---

**3.** The Court of Appeals found on the record before it that "... this is by no means a case of actual bias on the part of the trial judge." *Unit-* ed States v. Singer, 710 F.2d 431, 432 (8th Cir. 1983).

case." *Id.* at 1112. The use of "might" in the statute "clearly mandates that it would be preferable for a judge to err on the side of caution and disqualify himself in a questionable case." *Id.*

■ Despite this liberal standard, recusal is not to be undertaken lightly. If one judge withdraws, another must take up the case. And a judge has a duty not to avoid cases just because they are difficult or controversial. *See* Report of Senate Judiciary Committee recommending Section 455, quoted in 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3549 (1975). Moreover, recusal is not required just because a party dissatisfied with a court's rulings claims bias. *See e.g., United States v. Jackson,* 627 F.2d 1198, 1207 (D.C.Cir.1980).

■ On the other hand, judges commonly disqualify themselves when a fellow judge in their district is a party to a legal proceeding. While Judge Lord is obviously not a party to the case before the court, publicity surrounding the hearing, generated in part by him, has drawn public attention to his actions and comments. The motion to recuse and the reasons given therefor by the movants have also received wide publicity. Judge Lord has figured in the testimony, and he has himself offered to testify. Singer's memorandum states that "the Chief Judge may be subpoenaed as a witness." The admissibility of such evidence is seriously disputed by the parties. It is in this setting that the motion to recuse must be considered.

The suggestion is that a reasonable person could question whether a judge in this district might be affected in ruling, either consciously or subconsciously, by friendship or a spirit of collegiality or because of the relationship between judges on the same bench. This is the heart of the recusal motion. The government's position, that matters related to the first trial are no longer relevant because the defendants have been given a new trial and that defense counsel improperly seek to expand the scope of the pretrial proceeding beyond the legitimate issue of whether the Mesh-

besher file was improperly obtained, is a strong one. Nevertheless, it appears to this court that the key issue on the motion to recuse is whether this court's rulings excluding evidence related to the Chief Judge might raise reasonable questions about the court's impartiality.

In the unusual circumstances presented, this court is persuaded that the public perception of a fair and impartial judicial system would be enhanced if a judge from outside this district were to decide these issues. Our Constitution created an independent federal judiciary in order to ensure that judicial decisions would be impartial and made only upon the law. There is a strong tradition in our country of assuring not only a fair and impartial judicial forum, but also the appearance of fairness and impartiality. Congress has codified these values in the recusal statute. 28 U.S.C. § 455(a). Although this court is not convinced that the excluded evidence relating to Judge Lord has any relevance whatsoever on the motion to dismiss, it is persuaded that the public might reasonably attribute such evidentiary rulings to partiality towards a judge on the same bench. For this reason, then, and in the interests of the appearance of fairness and impartiality, the court is convinced that it should withdraw and that the motion to recuse should therefore be granted.

### ORDER

Accordingly, based upon the above, and all the records, files, and proceedings herein,

IT IS HEREBY ORDERED that defendants' motion to recuse is granted.