**UNITED STATES of America, Plaintiff,**

v.

**William Walter BOYCE, Defendant.**

**No. Crim. 4–84–89.**

United States District Court,
D. Minnesota, Fourth Division.

Feb. 4, 1985.

James M. Rosenbaum, U.S. Atty., and Paul A. Murphy, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff.

Steven Meshbesher, Meshbesher, Singer & Spence, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's objections to the December 28, 1984 report and recommendation of the United States Magistrate. On November 8, 1984, defendant moved to suppress evidence seized pursuant to a search warrant executed on October 19, 1984. The Magistrate recommended denying this motion in a report and recommendation dated November 30, 1984. The Magistrate also concluded that defendant had not made a showing sufficient to warrant a *Franks* hearing. Defendant filed *in camera* objections to the November 30, 1984 report and recommendation. On December 13, 1984, the Court remanded the case to the Magistrate in light of the *in camera* documents defendant submitted with his objections. On remand, the Magistrate conducted a *Franks* hearing. The Magistrate next issued the December 28, 1984 report, recommending that defendant's suppression motion be denied. The Court will not adopt that report and will grant defendant's motion to suppress.

## FACTS

On October 24, 1984, a grand jury indicted defendant for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1982). The indictment was in large part based on the fruits of a search of defendant's residence.

Sergeant Ronald Johnson of the Minneapolis Police Department's Narcotics Squad, along with two other law enforcement officers, executed a search at defendant's residence on October 19, 1984. The search produced approximately nine ounces of co-

caine and $3,600 in cash. The officers executed the search pursuant to a search warrant Johnson had obtained on October 19, 1984. The warrant was issued on the basis of Johnson's affidavit (hereafter search warrant affidavit) which stated in part:

> On this date, 10/18/84, your affiant talked to a confidential, reliable informant who has proven to be reliable by supplying information over the past month to your affiant concerning Cocaine traffickers which as [sic] been independently corroborated to be factual in all instances by investigation. This confidential, reliable informant advised your affiant that within the past 72 hours, the informant has been in the residence at 4936 Nokomis Avenue South and observed a large quantity of Cocaine in the possession of Bill Boyce who was offering the Cocaine for sale.

Even though Johnson's affidavit stated that he spoke with the informant on October 18, 1984, no one disputes that the conversation actually took place on October 19, 1984.[1]

The confidential informant Johnson was referring to in his affidavit was Christopher Hamilton. Johnson described his relationship with Hamilton in an affidavit sworn to on November 16, 1984.[2] In that affidavit, Johnson described his dealings with Hamilton prior to October 19, 1984 as follows:

> 5. It is my understanding that on or about October 1, 1984, Christopher Hamilton called Assistant U.S. Attorney Don Lewis and told Mr. Lewis that he feared that Joseph Sazenski was out to get him. Mr. Lewis referred Hamilton to me, since

---

1. Defendant argues that Johnson intentionally wrote October 18, 1984 in an effort to convey the impression that he had spent more time corroborating Hamilton's story than was actually the case. Yet, as the Magistrate pointed out, the affidavit stated that it was *sworn* to on October 19, 1984. The Magistrate concluded that the date "10/18/84" in the body of the affidavit must have been a typographical error. December 28, 1984 Report and Recommendation at 6. The Court agrees with the Magistrate.

2. This affidavit was sworn to one day after Johnson testified at the November 15, 1984 suppression hearing. The government submitted this affidavit *in camera* to the Magistrate before the Magistrate issued his first report and recommendation dated November 30, 1984. At the *Franks* hearing on December 19, 1984, the Magistrate ordered that all *in camera* affidavits be unsealed. December 19, 1984 Transcript at 137 (hereafter 2d Tr.). Defense counsel first had access to this affidavit after the Magistrate issued the December 19, 1984 report.

Lewis knew that I had previously investigated Mr. Sazenski.

6. Shortly thereafter, I received a telephone call from Mr. Hamilton who stated that he wanted to cooperate against Mr. Sazenski and other cocaine dealers. I then set up an appointment to meet with him.

7. On the same evening, Special Agent Bauer and I met with Mr. Hamilton in Minnetonka, Minnesota. During the interview, Mr. Hamilton described his involvement with Sazenski and others and stated that his girl friend, Shelly Wentz, was dealing directly with Joseph Sazenski. I had previously arrested Shelly Wentz on several occasions, one of which involved receiving cocaine in the mails from Colombia. Therefore, I was aware of Shelly Wentz's prior drug involvement.

8. During the same interview, I asked Mr. Hamilton when was the last time he used cocaine. He stated that he had used 3½ grams of cocaine the night before. Despite this, he was able to give me details concerning Shelly Wentz such as her address and her past activities, many of which were already known to me.

9. Inasmuch as it appeared that Mr. Hamilton had a serious cocaine habit, I suggested to him that he enter drug treatment. I told him that after he had dried up his cocaine habit, if he still wanted to cooperate, we still would work with him.

Johnson went on in the affidavit to tell of the information Hamilton revealed on October 19, 1984 concerning the defendant.

Although Johnson's affidavit states that Hamilton contacted Assistant U.S. Attorney Donald Lewis on or about October 1, 1984, the Court concludes that Hamilton contacted Lewis on October 4, 1984. This conclusion is slightly different from the Magistrate's proposed finding that Hamilton and Johnson first met "on or about

October 1, 1984." December 28, 1984 Report and Recommendation at 3 (hereafter 2d R & R). The Court bases its finding on Hamilton's testimony that he had contacted Lewis on October 4, 1984. December 19, 1984 Transcript at 105–06 (hereafter 2d Tr.). Hamilton also testified that Hamilton had met Johnson no more than two weeks before Hamilton implicated the defendant on October 19, 1984. 2d Tr. at 112.[3] Johnson himself testified that on October 19, 1984, he had known Hamilton for only two or three weeks. November 15, 1984 Transcript at 49 (hereafter 1st Tr.). The record also contains indications that Hamilton first contacted Johnson one week *after* Hamilton spoke with Lewis on October 4, 1984, which would mean that the Johnson-Hamilton meeting took place only one week prior to October 19, 1984. *See* 2d Tr. at 72–74, 107. One point is unquestioned, Johnson and Hamilton first met subsequent to Hamilton's first contacting Lewis. Therefore, the Court concludes that the time between the initial Johnson-Hamilton meeting and Johnson's swearing to the search warrant affidavit was no longer than two weeks.

Subsequent to Christopher Hamilton's contacting Lewis, but prior to Christopher Hamilton implicating defendant on October 19, 1984, Christopher Hamilton's brother Gregory Hamilton spoke with Johnson regarding Christopher. Gregory wanted to know if he should take seriously certain statements that Christopher made about Christopher's life being in danger. Gregory testified that Johnson stated that Christopher "was the typical cocaine addict, he was all strung out, he wasn't making any sense, and he didn't have any information that he [Johnson] could use." 2d Tr. at 74–75. Gregory also testified that Johnson said Christopher "didn't have enough information that could do anybody any damage." 2d Tr. at 75.

On October 19, 1984, Christopher Hamilton was arrested. During interrogation on

---

**3.** At the hearing, Hamilton previously had testified that his meeting with Johnson was only one week before Hamilton implicated the defendant, 2d Tr. at 108, 111, but Hamilton's final answer was that the interval was no longer than two weeks. 2d Tr. at 112.

that day, Hamilton told Johnson that the defendant was Hamilton's supplier. Hamilton also told Johnson that he had recently (within the last three days) made a cocaine purchase from defendant at defendant's residence. At the time Hamilton made these statements, he had been using cocaine for three consecutive days. 2d Tr. at 105. In addition, Hamilton had not slept for the past four days. 2d Tr. at 113. The Magistrate concluded that when Hamilton provided Johnson with information on October 19, 1984, Hamilton was "under the influence" or at least "suffering from the effects of cocaine" use. 2d R & R at 3. The affidavit of Special Agent Michele Leonhart, who was also present during one of the Hamilton interrogation sessions, supports the Magistrate's conclusions. The Court agrees with the Magistrate that Hamilton was under the influence of cocaine on October 19, 1984. It is also clear that Hamilton was very emotionally upset on that day. Again, Leonhart's affidavit supports this conclusion, as does the affidavit and testimony of Probation Officer Pamela McNulty. McNulty interviewed Hamilton on October 19, 1984, and she testified that Hamilton was hyperactive, nervous, anxious, and that he cried at inappropriate times. 2d Tr. at 131–32.

Although Hamilton was under the influence of cocaine on October 19, 1984, the Magistrate concluded that Hamilton nevertheless gave appropriate answers in response to questions of McNulty and law enforcement officials. The affidavit of Leonhart, and the affidavit and testimony of McNulty support this conclusion. 2d Tr. at 134. Therefore, the Court finds that Hamilton was able to give appropriate answers to questions on October 19, 1984, even though Hamilton was obviously quite upset and under the influence of cocaine. Aware of Hamilton's condition, the law enforcement officers sent Hamilton to a detoxification center on October 19, 1984.

1st Tr. at 34. Thus, instead of making a first appearance before a magistrate on October 19, 1984, Hamilton did not make a first appearance until October 22, 1984.

Sometime after Hamilton implicated defendant, defendant began to suspect that Hamilton was the confidential informant referred to in Johnson's search warrant affidavit. After the Magistrate issued his first report and recommendation, defendant submitted *in camera* objections to the Magistrate's report. Included in the submission was a two-page handwritten statement signed by Hamilton. (A witness attested to the statement, but the document was not notarized.) Defense counsel's investigator, accompanied by a close friend of Hamilton, obtained this statement on November 13, 1984 while Hamilton was staying at a drug treatment center in St. Mary's Hospital. In this statement, Hamilton said that he had never mentioned defendant's name to Johnson on October 19, 1984. Defendant submitted this statement to the Court after the Magistrate issued his first report and recommendation, thus the Magistrate did not have an opportunity to. see it. Based on this statement, the Court ordered a remand to the Magistrate.

■ On remand, the Magistrate proceeded to conduct a *Franks* hearing.[4] The Magistrate observed in his first report and recommendation that informants often "deny their role when interviewed by a defendant's representatives." (Citation omitted.) November 28, 1984 Report and Recommendation at 11 (hereafter 1st R & R). This observation proved to be precisely accurate concerning defendant's allegation that Hamilton had not given Johnson defendant's name on October 19, 1984. At the December 19, 1984 *Franks* hearing, Hamilton testified that he had in fact implicated defendant by name during Johnson's interrogation on October 19, 1984. 2d Tr. at 113, 118. Hamilton further testified

---

**4.** A *Franks* hearing allows defendants in criminal actions to challenge the veracity of a search warrant affidavit. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Defendants are entitled to such a hearing only if they make a substantial preliminary showing of police dishonesty or reckless disregard of the truth. *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676–77.

that he signed the November 13, 1984 statement because he "didn't want to make myself look bad in front of my best friend." 2d Tr. at 110. Consequently, the Court finds that Hamilton did in fact implicate defendant by name on October 19, 1984.

## DISCUSSION

Defendant initially claimed that Hamilton never gave defendant's name to Johnson on October 19, 1984. The government is absolutely correct in stating that this charge is utterly false. Nevertheless, Johnson's vindication on this accusation does not immunize him from further scrutiny by the Court. The Court's examination of Johnson's own words, more specifically a comparison of his statements in the search warrant affidavit and the November 16, 1984 affidavit, has proven to be central in the Court's analysis.

In his search warrant affidavit, Johnson stated that his reliable informant proved reliable "by supplying information over the past month ... concerning Cocaine traffickers which as [sic] been independently corroborated to be factual in all instances ...." Yet, when Hamilton spoke to Johnson on October 19, 1984, Johnson had known Hamilton for at most two weeks (even according to Johnson's own affidavit, he had known Hamilton for at most 18 days). Moreover, the clear import of the language "supplying information over the past month" is that Hamilton had continually been supplying information to Johnson over a one-month span. Johnson's relationship with Hamilton was not, however, anything like the ongoing informant relationship Johnson portrayed in his search warrant affidavit.

Johnson's own affidavit of November 16, 1984, indicates that before October 19, 1984, he had met Hamilton only once. This affidavit states that Hamilton did describe his involvement with drug dealers, and stated that his girl friend was dealing directly with a specific dealer. The affidavit further states that Hamilton gave "details concerning [his girl friend] such as her address and her past activities, many of which were already known to [Johnson]." Thus, according to Johnson's own November 16, 1984 affidavit, Hamilton did not provide much in the way of useful or new information.

Johnson's search warrant affidavit, however, states that the information supplied by the informant has "been independently corroborated to be factual in all instances by investigation." This statement strongly implies that after having received the information, the police conducted investigations which substantiated the information. Yet, Johnson's November 16, 1984 affidavit states that he already knew much of the information Hamilton supplied, and the affidavit has no indication that the police conducted any subsequent investigations which corroborated Hamilton's information. The phrasing of the statement (*i.e.,* "all instances"), moreover, again implies a series of tips over the past month, which was not the case.

Another deception contained in the search warrant affidavit is Johnson's characterization of Hamilton as a reliable informant. In his November 16, 1984 affidavit, Johnson stated that he suggested to Hamilton that Hamilton "dr[y] up his cocaine habit," and then the police would "work with him." Johnson's declining to work with Hamilton until he obtained control over his drug addiction indicates that Johnson thought Hamilton was less than reliable at the time. A further indication of Johnson's doubts concerning Hamilton's reliability is found in statements Johnson made to Hamilton's brother Gregory Hamilton. Before October 19, 1984, Gregory Hamilton spoke with Johnson about Christopher Hamilton. According to Gregory Hamilton, Johnson stated that Christopher "was the typical cocaine addict, he was all strung out, he wasn't making any sense, and he didn't have any information that he [Johnson] could use." 2d Tr. at 74–75. Johnson also stated that Christopher Hamilton "didn't have enough information that could do anybody any damage." 2d Tr. at 75.

■ Johnson also failed to include in his search warrant affidavit certain facts which were relevant to an assessment of Hamilton's reliability.[5] Johnson did not mention that Hamilton was obviously under the influence of cocaine and quite disconcerted during the October 19, 1984 interrogation. As previously noted, Hamilton was able to provide appropriate answers to questions on October 19, 1984, but Hamilton's state of intoxication and his being extremely upset would still bear on the reliability and credibility of Hamilton's responses. In addition, the search warrant affidavit contained no indication that Hamilton was a drug addict who had just been arrested. Drug addicts in police custody have a tendency to tell the police whatever they want to hear. *See United States v. Kinnard,* 465 F.2d 566, 570–71 (D.C.Cir. 1972) (per curiam, Bazelon, C.J., concurring) (discussing trial testimony of addict/informants); *cf. United States v. Hoppe,* 645 F.2d 630, 633 (8th Cir.), *cert. denied,* 454 U.S. 849, 102 S.Ct. 170, 70 L.Ed.2d 138 (1981) (noting possible safeguards to ensure that jury gives proper weight to addict/informants' testimony). Thus, Hamilton's status as an addict just arrested would have been a relevant factor for the warrant issuing judge to consider. Search warrant affidavits, moreover, should not omit information regarding an informant's status which bears on the informant's reliability. *See United States v. Rule,* 594 F.Supp. 1223, 1240 (D.Me.1984). Standing alone, these omissions from the search warrant affidavit might not be so troublesome, but the Court must consider these omissions in light of the misrepresentations in the search warrant affidavit.

■ Those misrepresentations and the omissions all bore on the reliability and track record of Hamilton as an informant. The reliability and track record of an informant are obviously important considerations for the probable cause determination involved in the issuing of a search warrant. *E.g., Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2327, 2329, 2332, 76 L.Ed.2d 527 (1983); *United States v. Schmidt,* 662 F.2d 498, 502–03 (8th Cir.1981). The concept that an informant's reliability and track record is an important consideration, is not a technical rule of law, but rather a matter of common sense.[6] Surely, a narcotics officer of 18 years experience, such as Johnson, would be aware of the importance of an informant's reliability and track record in the determination of probable cause.[7]

■ The determination of probable cause necessary for the issuance of a search warrant, is left to "the detached scrutiny of a neutral magistrate" and not to the judgment of "a law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime.'" *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984) (quotations omitted). The law enforcement officer must present sufficient information to the magistrate so that the magistrate can make an informed determination of probable cause. *Gates,* 103 S.Ct. at 2332; *Franks v. Delaware,* 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978); *Aguilar v. Texas,* 378 U.S. 108, 110–11, 84 S.Ct. 1509, 1511–12, 12

---

**5.** Intentional or reckless omissions from search warrant affidavits can be equally as serious as affirmative misrepresentations. *See, e.g., United States v. House,* 604 F.2d 1135, 1141 n. 9 (8th Cir.1979), *cert. denied,* 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980).

**6.** In *Gates,* the Supreme Court abandoned the technical *Aguilar-Spinelli* test of evaluating informants' tips in favor of a common sense totality-of-the-circumstances approach. The Supreme Court noted, however, that the reliability of an informant is still highly relevant. *Gates,* 103 S.Ct. at 2327.

**7.** Another indication that Johnson would be aware of the importance of an informant's reliability and track record is Johnson's extensive involvement in cases in which the sufficiency of a search warrant was an issue. *See, e.g., United States v. Thompson,* 751 F.2d 300 (8th Cir.1985); *United States v. Singer,* 687 F.2d 1135, 1139–40 (8th Cir.1982), *rev'd,* 710 F.2d 431 (1983) (en banc), *on remand,* 575 F.Supp. 63, 65–66 (D.Minn.1983); *United States v. McGlynn,* 671 F.2d 1140, 1141–42 (8th Cir.1982); *House,* 604 F.2d at 1137–39; *United States v. Carwell,* 491 F.2d 1334, 1335 (8th Cir.) (per curiam), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974).

L.Ed.2d 723 (1964). Further, the officer should put forth in the affidavit only information he believes to be true. *Franks*, 438 U.S. at 164–65, 98 S.Ct. at 2680–81.

■■■ Johnson, however, did not simply present the relevant facts to the issuing judge. In an effort to enhance his chances of obtaining a search warrant, Johnson took one meeting with a "typical cocaine addict" who had supplied relatively innocuous information, and attempted to glorify it into a continuous relationship with a proven reliable informant. Intentionally or recklessly preparing a search warrant affidavit to unmistakably create an impression of enhanced reliability for an informant constitutes an affirmative misstatement for fourth amendment analysis. *See Rule*, 594 F.Supp. at 1240. Here, Johnson's actions, at best, constitute a reckless disregard for the truth. Not only did Johnson create unmistakable false impressions, but he omitted relevant information from his search warrant affidavit. In sum, the Court finds that Johnson recklessly disregarded the truth in the preparation of his search warrant affidavit and that the judge issuing the warrant was misled as a result.

Even accepting all the statements contained in the search warrant affidavit as true, the Magistrate concluded that the search warrant affidavit failed to meet the *Gates* totality-of-the-circumstances test for probable cause. 1st R & R at 8.[8] Nevertheless, the Magistrate concluded that the fruits of the October 19, 1984 search were admissible under the "good faith" exception established in *Leon*. The Court fully agrees that the search warrant affidavit failed to satisfy even the lenient *Gates* totality-of-the-circumstances test,[9] and the Court adopts the reasoning of the Magistrate on this point. The Court does not, however, agree that *Leon* permits admission of the fruits of the search in this case.

In summarizing its holding in *Leon*, the Supreme Court stated that the exclusionary rule would still apply in cases involving a search warrant *only* if one of three circumstances existed:

    1. the issuing "magistrate abandoned his detached and neutral role," *or*

    2. "the officers were dishonest or reckless in preparing their affidavit," *or*

    3. the officers executing the warrant "could not have harbored an objectively reasonable belief in the existence of probable cause."

*Leon*, 104 S.Ct. at 3423. Earlier in the opinion, the Supreme Court stated that "[s]uppression ... remains ... appropriate ... if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for reckless disregard of the truth." *Leon*, 104 S.Ct. at 3421 (*citing Franks*). Here, the Court has found that, at best, Johnson showed a reckless disregard for the truth in preparing the search warrant affidavit and that the judge issuing the warrant was misled as a result. Therefore, the exclusionary rule still applies.

The Magistrate, to be sure, considered the possibility that Johnson intentionally or recklessly omitted and misrepresented some information from the warrant affidavit. The Magistrate concluded that even if the defendant had established that Johnson intentionally or recklessly omitted information, the alleged omissions would not "have established that probable cause for the warrant did not exist." 2d R & R at 6. The Magistrate also concluded that even if Johnson had lied in stating that he had known Hamilton for a month, the two week difference would not have been material to the probable cause determination. 2d R & R at 6.

■■■ Under *Franks* whether or not an intentional or reckless misrepresentation in

---

8. The *Gates* test is "considerabl[y] more indulgent to official conduct" than the prior *Aguilar-Spinelli* test. *United States v. Sager*, 743 F.2d 1261, 1264 (8th Cir.1984).

9. The government has never taken issue with this conclusion of the Magistrate, but the Magistrate's finding in favor of the government on other grounds made such a challenge unnecessary.

a search warrant affidavit was material in the issuing magistrate's determination of probable cause is a key issue. If a defendant establishes by a preponderance of the evidence that the affiant intentionally or recklessly included false material in the search warrant affidavit, then the reviewing court must excise that information and determine if the information remaining in the affidavit still supports a finding of probable cause. *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676–77. Similarly, the reviewing court must add to the search warrant affidavit intentional or reckless omissions, and determine if the new information causes the affidavit to no longer support a determination of probable cause. *See, e.g., United States v. House*, 604 F.2d 1135, 1141 n. 9 (8th Cir.1979), *cert. denied*, 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980). Thus, the starting point in *Franks* is always a search warrant affidavit which on its face supports a finding of probable cause. The reviewing court next deletes and adds to the affidavit and then determines whether the adjusted warrant affidavit still supports a determination of probable cause.

As defendant points out, however, in the present case the Magistrate had previously concluded that the search warrant affidavit, even on its face, failed to establish probable cause under *Gates*. 1st R & R at 8. (Again, the Court agrees with this conclusion.) The adjustments a court makes to a search warrant affidavit as the result of a *Franks* hearing only serve to lessen the affidavit's chances of establishing probable cause. Yet, when the affidavit fails to establish probable cause in the first place, reviewing the adjusted affidavit for probable cause is a meaningless exercise.

The *Leon* decision, moreover, does not require such a meaningless exercise. The Supreme Court stated that suppression is still appropriate if police "officers were

dishonest or reckless in preparing their affidavit." *Leon*, 104 S.Ct. at 3423. This standard makes no mention of a materiality requirement. *See United States v. Segovia-Melgar*, 595 F.Supp. 753, 757 (D.D.C. 1984). The Supreme Court also stated in another passage in *Leon* that suppression was appropriate if the issuing magistrate was misled by false information intentionally or recklessly included in a search warrant affidavit.[10] *Leon*, 104 S.Ct. at 3421. Presumably, issuing magistrates would be misled only by relevant considerations. Yet, to say that a magistrate was misled, is not to say that the false information would have transformed an affidavit establishing probable cause to one which would not.

■ The *Leon* court's failure to mention the concept of materiality to the probable cause determination or the warrant adjusting process of *Franks* is understandable because the Supreme Court assumed that it was reviewing an affidavit which on its face, failed to establish probable cause. *Leon*, 104 S.Ct. at 3412. By definition, in fact, a reviewing court need never proceed to a *Leon* analysis if it first determines that a warrant affidavit does establish probable cause. *E.g., United States v. Young*, 745 F.2d 733, 758 (2d Cir.1984); *United States v. Hendricks*, 743 F.2d 653, 654 (9th Cir.1984). The Court therefore concludes that once a reviewing court finds a search warrant affiant to be dishonest or reckless, suppression is appropriate under *Leon* regardless of whether or not the misrepresentation or omission would be material under *Franks*.[11]

■ Finally, the Court notes that after a finding that Johnson recklessly prepared the search warrant affidavit, his objective good faith reliance on the warrant is no longer at issue. Certainly *Leon* emphasizes that the good faith exception it creat-

**10.** The Court has found that here the judge issuing the warrant was misled by Johnson's reckless disregard for the truth.

**11.** The decision in *United States v. Sager*, 743 F.2d 1261 (8th Cir.1984), is not to the contrary. In *Sager*, the court observed that the district court had implicitly found that the warrant affiant was neither dishonest or reckless. *Sager*, 743 F.2d at 1266. *Sager* was not, therefore, addressing *Leon's* dishonest nor reckless affiant justification for suppression.

ed is based on an objective standard. *Leon*, 104 S.Ct. at 3420 n. 20. In establishing its objective standard, the Supreme Court held that if the officers executing a warrant could not have held an objectively reasonable belief that the warrant was valid, then suppression was appropriate. Yet, the Supreme Court listed dishonesty or recklessness of the warrant affiant as an independent basis for suppression, a basis distinct from lack of objective good faith.

Furthermore, for the Court to avoid suppression because Johnson could have held an objectively reasonable belief in the warrant's validity,[12] would be extremely anamolous in light of the Court's finding that Johnson, at best, acted with a reckless disregard for the truth. The purpose of an *objective* good faith exception is to hold police officers to a higher standard than that required by a subjective standard. *See Leon*, 104 S.Ct. at 3422 n. 20. Under a subjective good faith exception, a police officer could argue that even though any reasonable officer would have known a search warrant was invalid, he himself did not know. By using an objective standard for good faith, however, the Supreme Court requires that all police officers conduct themselves as reasonable police officers. In sum, the objective standard of good faith cannot provide a shield for a warrant affiant under the circumstances in this case.

 Neither does the objective good faith of the other law enforcement officers executing the search warrant with Johnson save the admissibility of the evidence in question. As a factual matter, Johnson was one of the officers executing the warrant, thus his objective good faith cannot provide the basis for admissibility. Even if Johnson had not been one of the officers executing the warrant, the Court's conclusion would be unchanged. A police officer cannot prepare a search warrant affidavit under these circumstances, and then circumvent suppression simply by letting other officers, unaware of those circumstances, execute the warrant. *See United*

*States v. Pritchard*, 745 F.2d 1112, 1118 (7th Cir.1984); *United States v. Roberts*, 747 F.2d 537, 546 n. 10 (9th Cir.1984); *Rule*, 594 F.Supp. at 1239. To allow such a process would make a mockery of the fourth amendment.

The Court, to be sure, does not lightly order the suppression of inherently trustworthy evidence. Suppression of evidence obtained from a search warrant, moreover, will rarely be appropriate. *See Leon*, 104 S.Ct. at 3421. Nevertheless, the exclusionary rule is still necessary to deter police conduct in limited situations. *See Leon*, 104 S.Ct. at 3413. The case at bar is such a situation.

Based upon the Court's independent de novo determination of the Magistrate's report, findings, and recommendation, IT IS ORDERED that:

1. defendant's objections to the report and recommendation are sustained;

2. the Magistrate's report and recommendation is adopted only so far as the Court has indicated in this opinion; and

3. defendant's motion to suppress the evidence obtained as a result of the October 19, 1984 search of defendant's residence is granted.

---

**12.** The Court expresses no view on this issue.