UNITED STATES of America, Plaintiff,

v.

Alberto MEDINA–REYES, Jesus Bahena–Carreno, Miguel Angel Rodriquez and Lourdes C. Bahena, Defendants.

Crim. No. 94–97.

United States District Court, S.D. Iowa.

Feb. 28, 1995.

Clifford D. Wendel, Jr., Asst. U.S. Atty., Des Moines, IA, for plaintiff.

Cynthia M. Moisan, Roehrick Hulting & Moisan, Des Moines, IA, for defendant Medina–Reyes.

Lawrence F. Scalise, Des Moines, IA, for defendant Rodriquez.

James F. Whelan, Asst. Federal Public Defender, Des Moines, IA, for defendant Bahena–Carreno.

## RULING ON MOTIONS TO SUPPRESS AND ORDER SUPPRESSING EVIDENCE

VIETOR, District Judge.

Defendants Alberto Medina–Reyes, Jesus Bahena–Carreno, Miguel Angel Rodriquez

and Lourdes C. Bahena are charged in a four count superseding indictment. In Count 1 all four defendants are charged with conspiring to distribute methamphetamine between January 1, 1993, and October 26, 1994, in violation of 21 U.S.C. § 846. In Count 2 all four defendants are charged with distributing methamphetamine on July 19, 1994, in violation of 21 U.S.C. § 841(a)(1). In Count 3 all four defendants are charged with possessing with intent to distribute methamphetamine on October 26, 1994, in violation of 21 U.S.C. § 841(a)(1). In Count 4 all defendants except Alberto Medina–Reyes are charged with using or carrying a firearm in relation to drug trafficking crimes on October 26, 1994, in violation of 18 U.S.C. § 924(c)(1). Defendant Lourdes C. Bahena has not yet been apprehended. The other three defendants are in custody and their trial is scheduled for April 3, 1995.

Defendants Medina–Reyes, Bahena–Carreno and Rodriquez move to suppress evidence obtained in the execution of a search warrant at their residence, 1807 S.W. Second Street, Des Moines, Iowa, on October 26, 1994. They contend that the search warrant was obtained by the applicant with reckless disregard for the truth, presenting to the issuing judge false information concerning the reliability of a confidential informant and withholding from the issuing judge information about the confidential informant that was critical to a determination of the confidential informant's reliability. A *Franks* hearing [1] was held on the motions on February 17, 1995, at which the two law enforcement officers involved in making application for the search warrant and their confidential informant testified.

## FINDINGS OF FACT

The confidential informant, whose identity is now known to all concerned, is Larry Flores. Flores was arrested on state charges of delivery of methamphetamine in Dallas County, Iowa. In early July 1994, he entered into a "Cooperation and Plea Agreement" with the Dallas County Attorney.

The agreement provides in paragraph 1 for Flores to assist investigating officers

in gathering evidence as deemed necessary including cooperation which results in prosecutable cases as determined by the office of the county attorney against the following persons: Medina Reyes; Jesus (Last name unknown—associate of Medina Reyes); presently unnamed sources of cocaine in the State of Texas, known to F [Flores]; and Jairo Galicia.

The agreement further provides in paragraph 2:

The prosecutable cases contemplated by this agreement include purchases of narcotics from the above named persons. These purchases must be corroborated to the satisfaction of the office of the county attorney * * *. * * * At the discretion of the investigating officers, the defendant may make introductions of undercover narcotics officers for the purpose of making above said purchases. Corroboration will be sufficient if such introductions result in successful purchases of controlled narcotics. The defendant must, within 30 days of the signing of this agreement, accomplish 2 purchases each from the California connection (Reyes—Jesus) and the Texas connection (cocaine—unnamed), a total of 4 purchases.

Paragraph 3 of the agreement provides:

A prosecutable case may also include providing information which results in a seizure by search warrant which results of evidence sufficient, in the opinion of the office of the county attorney, to charge one or more of the above listed persons with charges relating to possession of controlled substances with the intent to distribute.

Paragraph 4 provides in part:

The cooperating individual agrees to initiate no contact with any of the above named persons except under direction of investigating officers.

Paragraph 7 provides:

It is further agreed and understood between the State of Iowa and the defendant and his attorney, that *only* the results

---

1. A hearing held under the doctrine of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The doctrine is discussed in the text, *infra,* at pp. 473–74.

described in paragraph # 1 will result in satisfaction of the defendants obligations under this agreement and it is specifically agreed and understood that if the conditions set forth in paragraph # 2 and # 3 are not completed within 30 days of the signing of this agreement, for whatever reason the defendant will not be entitled to any recommendation of leniency by the State. [Emphasis supplied.]

Paragraph 8 provides in part:

In exchange for the defendant's cooperation as described above, and upon the defendant's complete performance of the terms of this agreement, the State agrees to do the following:

a. Upon the defendant's plea of guilty to the charge of Delivery of a Controlled Substance, to wit: Methamphetamine, the State would recommend a sentence of 10 years incarceration, that such term be suspended, the defendant being placed upon supervised probation, and given time to pay the mandatory fine, costs, and restitution.

b. That such recommendation is would not be made should defendant fail to fully complete the terms of this agreement; * * *.

Kenneth Frampton, a Special Agent of the Iowa Division of Narcotics Enforcement, who has eighteen years of law enforcement experience, participated in the Dallas County arrest of Flores. Later the Cooperation and Plea Agreement was drafted by the Dallas County Attorney in consultation with Frampton. Frampton saw the agreement after it was drafted and was aware of its contents.

After Flores signed the agreement, he went to California with Frampton, where he set up a meeting between undercover law enforcement officers and a possible source of drugs. Flores and Frampton then left California and the investigation there was taken over by California authorities. (The results, if any, are unknown to Frampton.)

Flores did not meet the thirty day deadline set in the Cooperation and Plea Agreement.

It appears that this limitation was waived, but Frampton and his superior, Ken Arduser, met with Flores and mentioned to him that he could be facing federal charges.[2]

From the time that Flores began cooperating with law enforcement agents through October 26, 1994, he told Frampton various things which were later set forth in the application for the search warrant as follows:

This affiant has received information from a confidential informant that in 1993, the informant had received approximately one kilogram of cocaine from Alberto Medina Reyes and Lourdes Bahena over a four to five month period. The informant stated that Alberto Medina Reyes and Lourdes Bahena reside at 1807 Southwest Second in Des Moines, Iowa.

The informant stated that in February of 1994, the informant went to California with Alberto Reyes and Lourdes Bahena. At this time, Alberto Reyes purchased one kilogram of cocaine and the informant purchased approximately one pound of methamphetamine.

The informant stated that in May of 1994, the informant observed one kilogram of cocaine at the residence of 1807 Southwest Second, Des Moines, Iowa.

The informant stated that Alberto Medina Reyes's brother-in-law, Estevan LNU, would make deliveries of controlled substances for Reyes. The informant stated that Estevan lives with Reyes and Bahena at 1807 Southwest Second in Des Moines, Iowa.

On Tuesday, July 19, 1994, the informant was at 1807 Southwest Second, Des Moines, Iowa, and met with Alberto Reyes and Lourdes Bahena. At this meeting, Lourdes Bahena gave the informant approximately one-half gram of cocaine. The informant later checked with agents of the Iowa Division of Narcotics Enforcement and gave the agents the one-half gram of cocaine received from Lourdes Bahena.

On or about October 01, 1994, the informant stated that Alberto Medina Reyes

---

**2.** The spectre of federal charges is a dreaded one for drug traffickers because of the severe federal penalties.

was in California attempting to purchase controlled substances.

*   *   *   *   *   *

On Tuesday, October 25, 1994, the informant met with Lourdes Bahena and Jesus Bahena at 1807 Southwest Second, Des Moines, Iowa. During this meeting, it was negotiated that Lourdes Bahena and Jesus Bahena would deliver approximately one pound of methamphetamine for a purchase price of $13,000 on Wednesday, October 26, 1994.

On Wednesday, October 26, 1994 informant was inside the residence of 1807 SW 2nd, DM. IA. While inside the residence the informant observed approximately one pound of methamphetamine inside the refrigerator.

The search warrant application also contained the following information:

A criminal history check on Jesus Bahena indicates an arrest on March 30, 1994, by the Polk County Sheriff's Department for possession of cocaine.

A criminal history check on Alberto Medina Reyes indicates an arrest in July of 1987 for transporting controlled substance in California. The record also indicates that in August of 1988, Reyes was arrested for possession with intent to deliver controlled substance in California.

A check with Midwest Power indicated a Jesus Bahena, Lourdes Bahena, and Alberto Medina Reyes reside at 1807 Southwest Second, Des Moines, Iowa.

* * * *

On October 26, 1994 when the informant went to the residence of 1807 S.W. 2nd S/A Kevin Frampton was with the informant. S/A Frampton stayed outside in the informants vehicle while the informant went inside of 1807 SW 2nd. S/A Frampton observed the informant enter and exit the residence of 1807 SW 2nd.

When the informant returned to his vehicle the informant told S/A Frampton that a pound of methamphetamine was observed by the informant inside the fridge.

On October 26, 1994, Frampton assisted Scott Leighter, a Special Agent with the Iowa Division of Narcotics Enforcement, in preparing the application for the search warrant. Leighter, who was the sole affiant in support of the search warrant application, had very little personal knowledge of the investigation and relied primarily on information supplied by Frampton. He did not know any of the details of the agreement that Flores had with the Dallas County Attorney, although he was aware that Flores had some kind of agreement and that he was "working off some charges" for which he had been arrested. Frampton reviewed Leighter's affidavit, discussed the search warrant application with Assistant Polk County Attorney Jamie Bowers, and accompanied Leighter when he presented the search warrant application to Iowa District Associate Judge A. Patricia Houlihan.

Part of the affidavit is "Attachment B," a printed form containing various assertions (some with a blank to be filled in), beside each of which is a line on which the affiant, if he adopts the assertion, places an "X." On this form Leighter, by placing Xs and filling in some blanks, states that the informant (Flores) is viewed as reliable for several reasons. The first reason is: "The informant has supplied information in the past on *four* occasions that have proven reliable." This is not true. Next it is stated: "The informant's past information has led to the making of *two* arrests." This is not true. Next it is stated: "The information from the informant has led to the filing of the following charges: *Conspiracy to Distribute Methamphetamine.*" This is not true. It is next stated: "Past information from the informant has led to the discovery and seizure of stolen property, drugs or other contraband." This is not true. It is next stated: "The informant has not given false information in the past." This may be true, subject to the qualification that in the past Flores had given false information to Frampton concerning his own activities. It is finally stated: "The information supplied by the informant in this investigation has been corroborated by law enforcement personnel." This is true, but the corroboration is quite limited. Law enforcement personnel corroborated that Jesus Bahena, Lourdes Bahena and Alberto Medina–Reyes resided at 1807 Southwest Second

and that Frampton observed Flores enter the residence and later exit from the residence on October 26, 1994. It was also independently known by law enforcement officers that on or after July 19, 1994, Flores gave them one-half gram of cocaine, but there is no corroboration of his version of where he got it. In summary, it was corroborated that the Bahenas and Medina–Reyes lived where Flores said they lived, that he apparently knew them well enough to make a visit to their home, and that he, Flores, once turned over one-half gram of cocaine to law enforcement officers. While not corroborating anything Flores told the officers, their own investigation did reveal that Jesus Bahena had been arrested on March 30, 1994, for possession of cocaine and Alberto Medina–Reyes had drug arrests in California in 1987 and 1988. No convictions were revealed.

The Attachment B form has no provision on it for revealing any information which might detract from the reliability of the informant (except that if no "X" were placed on the line beside the statement that the informant had not given false information in the past, one might reasonably infer that he had given false information in the past). Frampton and Leighter did not reveal to Judge Houlihan any detracting information. Specifically, Judge Houlihan was not told about the Cooperation and Plea Agreement and its terms or even that the informant was "working off some charges," and she was not told about any of the matters mentioned in the following three paragraphs.

The alleged meeting of July 19, 1994, which is described in the search warrant affidavit, was in violation of paragraph 4 of the Cooperation and Plea Agreement, because Flores initiated the contact without direction of the investigating officers. The same is true of the alleged October 25, 1994, meeting that is described in the affidavit.

On October 1, 1994, Flores was detained at the Des Moines Airport and $20,000 was seized from him. Later that day Frampton met with Flores and told him that his conduct was not acceptable and that Flores had to be honest and up front with him. Flores denied that the money was drug money, but Frampton, as he testified, "knew he was lying." (At a later date Flores admitted to Frampton that the $20,000 was drug money.)

Flores was a drug user himself, and Frampton knew that.

Frampton testified that he did not think it was necessary to tell Judge Houlihan about the $20,000 episode on October 1 and did not think it was necessary to tell her about the terms of the Cooperation and Plea Agreement or that Flores was a drug user.

Judge Houlihan issued the search warrant, and a search of 1807 S.W. Second Street, where the three moving defendants resided, was executed on October 26, 1994. Numerous items of evidence were seized in the search.

Frampton testified that confidential informants are told by him that they must not violate the laws, but added: "You can't trust most of them very far." Frampton testified that in his opinion the search warrant would stand or fall on the reliability of Flores.

At a date after the search warrant was executed, Flores pleaded guilty to the state charges in Dallas County and was sentenced to two years probation.

## DISCUSSION AND CONCLUSIONS OF LAW

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

■ With certain exceptions, under the "exclusionary rule" items seized in violation of a defendant's Fourth Amendment rights must be excluded from evidence at defendant's trial. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

■ The affidavit for the search warrant in this case, on its face, presents an adequate

showing of probable cause to authorize issuance of the warrant. Under the doctrine of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) and its progeny, however, it becomes the task of the court to determine whether the affidavit contains falsehoods that were made knowingly and intentionally or with reckless disregard for the truth, or whether critical facts were omitted from the affidavit with the intent to make, or with reckless disregard of whether the omission makes, the affidavit misleading. If so, I must, in effect, delete the false information and add the omitted information and then determine whether the contents of the affidavit as so adjusted are sufficient to establish probable cause. *See Franks*, 438 U.S. at 156, 98 S.Ct. at 2676–77; *United States v. Clapp*, 46 F.3d 795, 801–02 (8th Cir.1995).

■ Although Leighter is the sole affiant on the application for the search warrant, all knowledge possessed by Frampton is to be considered. The *Franks* doctrine cannot be circumvented by an officer with full information selectively providing just some information to another officer who, left ignorant of the falsity of some of the information he has been provided, or ignorant of relevant information he has not been provided, or both, then becomes the affiant-applicant for the search warrant. *See United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993) (officers involved in the investigation who knew a relevant exculpatory fact, which was unknown to the officer who was the affiant-applicant for the search warrant, had a duty to provide that information to the judicial officer).

■ There was no evidence produced at the *Franks* hearing suggesting that the officers had any reason to believe that the statements about Flores' past informant accomplishments were true. Indeed, there was no evidence that Flores had ever previously provided law enforcement officers with any information. It is, therefore, my ultimate fact finding and conclusion that the false statements made in Attachment B to the affidavit as reasons to view the informant's information as reliable were made with reckless disregard for the truth and I will, in effect,

redact those false statements from the affidavit.

Furthermore, for the reasons hereinafter articulated, it is my ultimate fact finding and conclusion that failure to bring to Judge Houlihan's attention certain information—the terms of the Cooperation and Plea Agreement, the fact that Flores twice violated paragraph 4 of that agreement, the fact that Flores, after entering into the agreement, was apparently continuing to engage in drug trafficking and lied to Frampton about it, and the fact that Flores was a drug user—was done with reckless disregard of whether the omission of that information made the affidavit misleading. I will, in effect, add this information to the affidavit.

As the Eighth Circuit has stated, judicial officers issuing warrants easily suspect and take into account the typical kind of bargaining that goes on between police and a confidential informant, noting that we expect "judicial officers to be only neutral and detached—not naive and ingenuous." *United States v. Reivich*, 793 F.2d 957, 963 (8th Cir.1986). Later the Eighth Circuit again noted: "Judicial officers issuing warrants are aware of deals made with informants who themselves are facing charges. Therefore, failure to inform the issuing officer of a deal is not fatal to the validity of the warrant." *United States v. Wold*, 979 F.2d 632, 635 (8th Cir.1992); *see also United States v. Lueth*, 807 F.2d 719, 725–27 (8th Cir.1986) (affirming this court's overruling of a motion to suppress based on the fact that the DEA agent affiant did not disclose that the Omaha Police Department and the Douglas County Sheriff's Office had discontinued using the confidential informant because they suspected he was concealing his own continuing drug trafficking from them).

■ The cases cited in the preceding paragraph, however, do not stand for the proposition that a search warrant applicant never needs to disclose a cooperation agreement or other relevant information bearing negatively on a confidential informant's reliability. Law enforcement officers must present sufficient information to the judge so that the judge can make an informed and independent determination of probable cause, *Franks*, 438

U.S. at 165, 98 S.Ct. at 2681, and such information should include any relevant information regarding the informant's status which bears on his reliability. *See United States v. Boyce,* 601 F.Supp. 947 (D.Minn.1985).

In this case the Cooperation and Plea Agreement between Flores and the Dallas County Attorney is not the standard type of agreement between an informant and the police or prosecutors in which the informant agrees to tell the authorities all he knows and cooperate with them generally in obtaining evidence against drug dealers. The Cooperation and Plea Agreement is a remarkable document, the likes of which neither I nor the prosecutor nor the three defense lawyers have ever seen. Frampton testified that in his eighteen years he has seen only three or four such agreements, and he hastily added that those were drafted at the insistence of local prosecutors and not at his insistence. The agreement specifically calls for Flores to make a prosecutable case within a specified period of time against "Medina Reyes" and his associate, "Jesus." The agreement specifically provides that "only" such results, a prosecutable case against those persons, will result in the prosecutor recommending a suspended ten year sentence and probation on the state charges in Dallas County against Flores, and that failure to achieve those results would result in no such recommendation. Flores' only hope of getting a suspended sentence and probation was, in an allegorical sense, to deliver the heads of "Medina Reyes" and "Jesus" to the prosecutor on a silver platter.

An informant's veracity and reliability are "highly relevant in determining the value" of an informant's report. *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983); *see also Boyce,* 601 F.Supp. at 953. In my opinion, knowledge of such a remarkable agreement as we have in this case was "clearly critical" to any evaluation of the reliability of the informant and finding of probable cause, and therefore should have been revealed to Judge Houlihan. *See Reivich,* 793 F.2d at 961. The egregiousness of the omission is further compounded by the fact that Judge Houlihan was also not told that Flores was continuing to engage in drug trafficking, lying to the authorities about that, using drugs himself, and that two of the major contacts he claimed to have had with defendants as set forth in the search warrant affidavit were initiated by him on his own without the direction of law enforcement officers in direct violation of paragraph 4 of the Cooperation and Plea Agreement. Judge Houlihan needed that information, together with detailed information about the Cooperation and Plea Agreement, in order to independently and adequately judge the reliability of the informant and make an informed determination of whether probable cause existed.

Stripped of the false representations contained in Attachment B to the affidavit and adding the omitted information about the terms of Flores' Cooperation and Plea Agreement, his continuing drug dealing and drug usage, his breach of the plea agreement twice and his lying to Frampton about his own drug activities, it is my conclusion that the affidavit in support of the search warrant as so adjusted is not sufficient to establish probable cause. Applying the "totality of the circumstances" analysis required by *Gates, supra,* such a dark shadow is cast on the reliability of the confidential informant, Flores, that probable cause cannot be found. He had no past track record as an informant demonstrating reliability; he was seriously flawed by his own drug dealing, drug usage, lies to Frampton and violations of the control provision (paragraph 4) of his cooperation agreement; and he was under heavy pressure to make a prosecutable case against "Medina Reyes" and "Jesus." One cannot reasonably conclude that information from such a person rose to the level of probable cause. It is true that there is independent corroboration of his information about where the defendants lived and that he knew them, but knowing people and knowing where they live is of no great moment. Everybody knows countless people and where they live. Corroboration of such innocuous information is not enough to boost Flores' incriminating information to the probable cause level.

The fruits of the search cannot be salvaged by the exclusionary rule's "good faith" exception established in *United States v. Leon,* 468

U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). "Under *Leon,* a *Franks* violation is not excused." *Jacobs,* 986 F.2d at 1235 (citing *Leon,* 468 U.S. at 914 & n. 12, 923, 104 S.Ct. at 3416 & n. 12, 3420–21).

### RULING

The moving defendants' motions to suppress are **GRANTED,** and **IT IS ORDERED** that the government shall not introduce into evidence at the trial of those defendants the evidence seized in the October 26, 1994, search of the residence at 1807 S.W. Second Street, Des Moines, Iowa.