UNITED STATES of America

v.

Donald PAYDEN, Eugene Coleman and Anthony Grant, Defendants.

No. SS 84 Cr 566 (DNE).

United States District Court,
S.D. New York.

July 8, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for plaintiff; John K. Carroll, Asst. U.S. Atty., New York City, of counsel.

Robert M. Simels, P.C., Robert M. Simels, New York City, of counsel, for defendant Donald Payden.

Harry R. Pollack of counsel, for defendant Eugene Coleman.[*]

Robert L. Herbst, New York City, of counsel, for defendant Anthony Grant.

## OPINION AND ORDER

EDELSTEIN, District Judge:

Defendant Donald Payden ("Payden") has filed pretrial motions covering a wide range of issues. Defendants Anthony Grant ("Grant") and Eugene Coleman ("Coleman") have joined in Payden's motions. The background of this case has been set forth elsewhere, *see United States v. Payden*, 609 F.Supp. 1273 (S.D.N.Y. 1985), aff'd 768 F.2d 487 (2d Cir.1985); *in re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 605 F.Supp. 839 (S.D.N.Y.1985), *rev'd*, 767 F.2d 26 (2d Cir.1985); *United States v. Payden*, 598 F.Supp. 1388 (S.D.N.Y.1984), *rev'd*, 759 F.2d 202 (2d Cir.1985). Familiarity with these opinions is assumed so that only the facts directly relevant to the pretrial motions will be set forth herein. ....

## BACKGROUND

An indictment was filed on August 13, 1984 charging defendants Payden and Coleman with conspiring to violate the narcotics laws of the United States, in violation of 21 U.S.C. § 846, and charging Payden with distribution and possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. A superseding indictment was filed on October 10, 1984, which added a charge against defendant Grant for conspiracy and further charged Payden with organizing and supervising a continuing criminal enterprise, in violation of 21 U.S.C. § 848. A second superseding indictment was filed on February 25, 1985, which contained a more detailed list of items sought by the government from Payden, pursuant to the forfeiture provisions of 21 U.S.C. § 848.

## DISCUSSION

### I. DISMISSAL OF THE INDICTMENT.

The defendants present a number of potential grounds to dismiss the indictment. Most of these arguments are boilerplate and may be dismissed summarily.

#### A. *Multiple Conspiracies.*

The defendants contend that the conspiracy count of the indictment must be dismissed because it alleges multiple conspiracies. Specifically, defendants contend that count one, which alleges a conspiracy between the three defendants and others beginning in 1979 and continuing until 1984, charges several conspiracies, separated by time, location and intermediaries.

An indictment is sufficient if it: (1) contains the elements of the offense charged; (2) fairly informs the defendant of the nature of the criminal activity with which he is charged; and (3) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Carrier*, 672 F.2d 300, 303 (2d Cir.), *cert. denied*, 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.' ... 'Un-

---

[*] By Order dated June 19, 1985, Francis J. Murray was substituted as counsel for defendant Coleman. Mr. Murray did not appear for the argument or submission of these motions.

doubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.'" *Hamling v. United States*, 418 U.S. 87, 117–18, 94 S.Ct. 2887, 2907–2908, 41 L.Ed.2d 590 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612, 15 Otto 611, 26 L.Ed. 1135 (1882) and *United States v. Hess*, 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516 (1888)).[1]

Count one charges a conspiracy spanning over five years, and lists nine overt acts committed in furtherance of the conspiracy. Rule 8(a) of the Federal Rules of Criminal Procedure prohibits the charging of more than one offense in one count. Rule 7(c), however, specifically authorizes charging in a single count that an offense was committed by more than one means. "The charging of multiple means constituting a single and continuing offense is thus permitted even though the components of that single offense may otherwise be treated as separate offenses.... The question that arises, therefore, is whether the statute under which the defendants have been charged 'by its very nature, contemplates that several separate transactions form a single, continuing scheme, and may therefore be charged in a single count.'" *United States v. Abrams*, 543 F.Supp. 1184, 1190 (S.D.N.Y.1982) (quoting *United States v. Daley*, 454 F.2d 505, 509 (1st Cir.1972)); *see United States v. Berardi*, 675 F.2d 894, 897–99 (7th Cir.1982).

The narcotics conspiracy statute, 21 U.S.C. § 846, does "by its very nature contemplate that several separate transactions form a single, continuing scheme." *See United States v. Perry*, 550 F.2d 524, 531 (9th Cir.), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 228, 434 U.S. 827, 98 S.Ct. 104, 54 L.Ed.2d 85 (1977); *United States v. Panebianco*, 543 F.2d 447, 452–53 (2d Cir.1976) ("Most narcotics networks involve loosely knit vertically-integrated combinations.... [I]ndividual customers and suppliers are members of one overall conspiracy if they are aware of the size of the middleman's operations.... Parallel sales operations can be part of the same conspiracy if there is evidence of mutual dependence and support.... Hibernation for a few months does not necessarily signal the end of a criminal partnership.... Nor is a conspiracy terminated simply by turnover in some of the personnel"), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977). Even assuming, as the defendants contend, that the alleged conspirators were at various points separated by time, location and intermediaries, this does not warrant dismissal of the indictment as multiplicitous. *United States v. Moten*, 564 F.2d 620, 624–25 (2d Cir.), *cert. denied*, 434 U.S. 942, 959, 98 S.Ct. 438, 489, 54 L.Ed.2d 304, 318 (1977), 434 U.S. 974, 98 S.Ct. 531, 54 L.Ed.2d 466 (1978). Accordingly, the indictment is not void for charging multiple conspiracies.[2]

■ Payden contends that the evidence will show separate networks of drug dealing. At this juncture, however, the court is not in a position to judge the nature and the weight of the evidence to be introduced at trial. Any confusion the jury might suffer because of the nature of the conspiracy charged and proved may be ameliorated by instructing the jury on multiple

---

**1.** Defendants also contend that the indictment should be dismissed for failure to allege the essential facts constituting the offenses charged. Because the court finds that the indictment satisfies all the requirements listed above, this argument is rejected.

**2.** The indictment also sufficiently protects the defendants from future prosecutions for the same offense. It sufficiently sets forth the dates, places and nature of the charged offenses. Moreover, "[a]n indictment need not plead offenses in such detail as to be self-sufficient as a bar against further prosecution for the same offense; it is the judgment that constitutes the bar." *United States ex rel. Ballard v. Bengston*, 702 F.2d 656, 660 (7th Cir.1983). Defendants may rely on the entire record of this case in the event future criminal proceedings are initiated against them. *See Russell v. United States*, 369 U.S. 749, 764, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962).

conspiracies. *See United States v. Konefal,* 566 F.Supp. 698, 702 (N.D.N.Y.1983) ("Defendants will be protected from jury confusion or multiplicity problems by the use of appropriate jury instructions."). The government has stated that it will not object to such a charge. Government's Memorandum in Opposition to Payden's Pretrial Motions at 19. If at the close of the evidence, the court is convinced that "the evidence shows separate networks operating independently of each other," *United ed States v. Barlin,* 686 F.2d 81, 89 (2d Cir.1982), the court will instruct the jury on multiple conspiracies, *see United States v. Wilkinson,* 754 F.2d 1427, 1434 (2d Cir. 1985).

### B. *The Forfeiture Count.*

Payden also contends that count two, the § 848 count, must be dismissed because it does not satisfy the notice requirements of Rule 7(c). This objection is unfounded. Rule 7(c)(2) provides: "No judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information shall allege the extent of the interest or property subject to forfeiture." All that is required under this rule is a broad allegation regarding the items sought through forfeiture. *See, e.g., United States v. Grammatikos,* 633 F.2d 1013, 1024 (2d Cir.1980); *United States v. Thevis,* 474 F.Supp. 134, 145 (N.D.Ga.1979); *United States v. Bergdoll,* 412 F.Supp. 1308, 1318–19 n. 17 (D.Del.1976). Count two seeks forfeiture of all profits and proceeds of profits obtained by Payden from the alleged continuing criminal enterprise and four specific items, namely $2,000.00 in cash, a twenty-five per cent interest in a company represented by shares of stock

held in another person's name, an automobile and jewelry seized from Payden's home. The forfeiture count also contains an appendix which describes, in detail, the jewelry the government charges is forfeitable. There can be no credible claim that the indictment does not sufficiently allege "the extent of the interest or property subject to forfeiture," as required by Rule 7(c)(2).[3] *See United States v. Grammatikos,* 633 F.2d 1013 (2d Cir.1980); *United States v. Thevis,* 474 F.Supp. 134 (N.D.Ga. 1974).

In his supplemental pre-trial motion, Payden also seeks to strike from the indictment that part of the § 848 count which seeks forfeiture of an automobile and jewelry. Payden contends that because the § 848 count alleges that the enterprise began in January of 1979, it was the government's burden in presenting evidence before the Grand Jury to establish probable cause that the automobile and jewelry were purchased by Payden after January of 1979. Payden states that he has gathered evidence contrary to the government's charge that the assets were acquired after the commencement of the alleged enterprise.

This argument is rejected. It is well established that a facially valid indictment returned by a legally constituted and unbiased grand jury may not be challenged on the ground that it was based on inadequate evidence. *Costello v. United States,* 350 U.S. 359, 363–64, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956); *United States v. Harley,* 682 F.2d 1018, 1021 (D.C.Cir.1982); *United States v. Blitz,* 533 F.2d 1329 (2d Cir.), *cert. denied,* 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 79 (1976); *United States v. Chawla,* 482 F.Supp. 1136, 1140 (E.D.N.Y.1980).[4]

---

**3.** Dismissal of the indictment is not mandated even if the indictment does not provide adequate notice of the forfeiture. Failure to include notice of forfeiture only bars the forfeiture penalty. *United States v. Brigance,* 472 F.Supp. 1177, 1183 (S.D.Tex.1979); Note, *Criminal Forfeiture: Attacking the Economic Dimension of Organized Narcotics Trafficking,* 32 Am. U.L.Rev. 227, 240 & n. 96 (1982).

**4.** By letter filed February 4, 1985, defendant Grant seeks inspection of the Grand Jury minutes to determine whether a *prima facie* case was presented against Grant before the Grand Jury. Based on *United States v. Costello, supra,* this request is denied. The law is clear that "a claim that the evidence presented to the grand jury was incompetent or inadequate is not a ground for inspection or dismissal of the indictment." *United States v. Gonzalez,* 38 F.R.D. 326, 328 (S.D.N.Y.1965).

**810**

Whether the government has established that the assets sought in the superseding indictment are fruits of the continuing criminal enterprise is a question for the jury. *See United States v. Murillo*, 709 F.2d 1298 (9th Cir.1983); Fed.R.Crim.P. 31(e).

## II. INSPECTION OF GRAND JURY MINUTES.

Payden contends that the Grand Jury minutes should be disclosed based on a showing of "particularized need" or, in the alternative, that disclosure is required because grounds may exist to dismiss the indictment based on matters occurring before the Grand Jury, Fed.R.Crim.P. 6(e)(3)(C)(ii).

### A. *"Particularized Need".*

 A party seeking disclosure of grand jury minutes must show a particularized need that outweighs the government's strong interests in secrecy.[5] *United States v. Moten*, 582 F.2d 654, 662 (2d Cir.1978). The pendency of a grand jury inquiry places an especially heavy burden on the party seeking disclosure of grand jury minutes. *In re Grand Jury Proceedings*, 760 F.2d 436, 440 (2d Cir.1985). Thus, even when the defendant demonstrates a "particularized need" for disclosure, the grand jury minutes may not be disclosed if "the grand jury investigation remains sufficiently active that disclosure of materials would prejudice a legitimate interest of the government." *United States v. Moton, supra*, 582 F.2d at 663. There are numerous strong policy reasons

for secrecy when a grand jury investigation remains active:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering of witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

*Id.* at 662 (quoting *United States v. Amazon Indust. Chem. Corp.*, 55 F.2d 254, 261 (D.Md.1931)).

 Payden's asserted "particularized need" for inspection of the Grand Jury minutes is his belief that the evidence presented to the Grand Jury was tainted and unreliable. Memorandum of Law in Support of Payden's PreTrial Motions, at 28–35. The Grand Jury, however, is still investigating the existence of additional co-conspirators and additional items for forfeiture.[6] Moreover, on March 22, 1985, the government submitted an affidavit, *in camera*, which alleges a history of violence and threats of violence by Payden that makes continued secrecy of the Grand Jury proceedings particularly important. The

---

**5.** The provision relating to disclosure upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury

has proven extremely limited for two reasons. First, since defendant's right to disclosure depends on a demonstration of grounds for dismissal of the indictment, the scope of disclosure is confined to the narrow area within which an indictment may be attacked. Second, the particularized need standard is generally applied to motions for disclosure under this provision. Consequently, general allegations that the transcripts are necessary to prepare a motion to dismiss an indictment, or

that transcripts might provide evidence of prosecutorial abuse, or conclusory allegations of misconduct without factual support have all been held insufficient to permit disclosure. J. Moore, Moore's Federal Practice, ¶ 6.05[3], at 6–114.

**6.** Although no witnesses were called to the Grand Jury between October 10, 1984 and January 29, 1985, *in re Grand Jury Subpoena Duces Tacum Dated January 2, 1985 (Robert M. Simels, Esq.)*, 767 F.2d 26, 29 (2d Cir.1985), a second superseding indictment was filed on February 25, 1985.

government's allegation that defendant threatened the life of Claudine J. Jones, one of the government's witnesses against Payden, was substantiated by the testimony of James Turner at the bail hearing held by this court beginning May 9, 1985. *United States v. Payden*, 609 F.Supp. 1273, 1277–80 (S.D.N.Y.1985), *aff'd* 768 F.2d 487 (2d Cir.1985). Under the circumstances of this case, the government's need for secrecy of the Grand Jury proceedings outweighs Payden's alleged "particularized need." Accordingly, the court will not allow disclosure to Payden of the Grand Jury minutes under the "particularized need" test.

### B. *Grounds to dismiss the indictment: Prosecutorial Misconduct.*

Payden seeks dismissal of the indictment based on prosecutorial misconduct or, in the alternative, disclosure of Grand Jury minutes, because the prosecutor's alleged misconduct before the Grand Jury may constitute a sufficient basis for dismissal of the indictment. There are several allegations of misconduct.

### 1. Excessive Use of Hearsay.

 Payden contends that the government's excessive use of hearsay before the Grand Jury warrants dismissal of the indictment. The Second Circuit has developed the doctrine of prosecutorial misconduct to quash indictments based on the unreasonable use of hearsay before the grand jury. *See United States v. Estepa*, 471 F.2d 1132 (2d Cir.1972). *See generally* Note, *The Prosecutor's Unnecessary Use of Hearsay Evidence Before the Grand Jury*, 61 Wash.U.L.Q. 191, 201–06 (1983) (discussion of prosecutorial misconduct doctrine). Extensive use of hearsay is "disfavored," *United States v. Hogan*, 712 F.2d 757, 761 (2d Cir.1983), but permissible "when direct evidence is unavailable or when it is demonstrably inconvenient to summon witnesses able to testify to facts from personal knowledge." *United States v. Umans*, 368 F.2d 725, 730 (2d Cir.1966). *See also United States v. Bari*, 750 F.2d

1169, 1176 (2d Cir.1984) ("Although hearsay can mislead a grand jury as to the strength of the government's case, there is no *per se* prohibition on its use."); *United States v. Bein*, 728 F.2d 107, 113 (2d Cir.) ("Presentation to a grand jury of hearsay or other evidence inadmissible at trial is not *per se* prohibited, ... at least so long as the reliance upon it is not so extensive as to mislead the grand jury as to the strength of the evidence."), *cert. denied*, —— U.S. ——, 105 S.Ct. 135, 83 L.Ed.2d 75 (1984). The indictment may be dismissed based on the excessive use of hearsay if the government's use of hearsay misleads the grand jury to believe that the testimony before them was first-hand when it was in fact hearsay. *United States v. Ramirez*, 482 F.2d 807, 812 (2d Cir.), *cert. denied*, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973); *see United States v. Ginsberg*, 758 F.2d 823, 830 (2d Cir.1985); *United States v. Bari, supra*, 750 F.2d at 1176–77. Another formulation of the test is that if an indictment would not have been handed down had first-hand information been presented to the grand jury, then the indictment must be dismissed. *United States v. Estepa*, 471 F.2d 1132, 1137 (2d Cir.1972).

In this case, Payden does not contend that the government misled the jury into believing that the hearsay testimony they heard was first-hand or that the government failed to inform the Grand Jury that it had a right to demand live witnesses. Rather, Payden contends that the government's excessive use of hearsay deprived him of the ability to impeach prosecution trial witnesses through the use of their Grand Jury testimony, pursuant to the Jencks Act, 18 U.S.C. § 3500. The government, however, is not required under the Jencks Act to call its best available witnesses before the grand jury so that their testimony could be recorded for the defendant's benefit. *United States v. Head*, 586 F.2d 508, 511 (5th Cir.1978). Moreover, the government contends that the use of hearsay before the Grand Jury was "imperative," in light of the Grand Jury's "covert investigation followed by arrest and indict-

ment within ten days of arrest." Government's Memorandum in Opposition to Donald Payden's Pretrial Motions at 24. Under the circumstances of this case, Payden has failed to show that the government's use of hearsay before the Grand Jury warrants dismissal of the indictment, or even inspection of the Grand Jury minutes. Thus, the Grand Jury minutes cannot be disclosed on this basis.

2. Other Misconduct.

▇▇▇▇ Payden also contends that the Grand Jury minutes would demonstrate other forms of prosecutorial misconduct in front of the Grand Jury.[7] The court has already determined that the information should not be disclosed because of the pendency of the Grand Jury investigation. However, even if the Grand Jury investigation were not continuing, defendant's claims of prosecutorial misconduct before the Grand Jury are not of sufficient severity to require either dismissal or disclosure.[8]

Payden alleges three instances of prosecutorial misconduct. First, Payden contends that the government played an intercepted conversation between Payden and a third person involving the sexual proclivity of one of Payden's girlfriends while this girlfriend was testifying in front of the Grand Jury. Second, Payden contends that the United States Attorney served a Grand Jury subpoena returnable on a date that the Grand Jury was not meeting and called the witnesses into the United States Attorney's office for questioning. Finally, Payden contends that the prosecutor asked questions of a Grand Jury witness that would associate Payden with a drug dealer.

Courts have been very cautious in dismissing indictments based on prosecutorial misconduct. *United States v. Samango*, 607 F.2d 877, 881 (9th Cir.1979) ("frequently discussed but rarely invoked"); *United States v. Chanen*, 549 F.2d 1306, 1310 (9th Cir.) ("courts have been reluctant to dismiss indictments because of prosecutorial misconduct"), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977); *Beatrice Foods Co. v. United States*, 312 F.2d 29, 39 (8th Cir.) (Blackmun, J.) ("Courts generally have been most cautious in invalidating indictments for alleged grand jury misconduct by the prosecutor"), *cert. denied*, 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199 (1963). In order to inspect the grand jury minutes, the movant must show some "particularized need, or a gross and prejudicial irregularity influencing the grand jury, or some similar compelling reason." *United States v. Dioguardi*, 332 F.Supp. 7, 20 (S.D.N.Y.1971); *see also United States v. Bari, supra*, 750 F.2d at 1176 ("dismissal is warranted only where the prosecutor's conduct amounts to a knowing or reckless misleading of the grand jury as to an essential fact."). The misconduct alleged in this case, if it in fact occurred, does not require dismissal of the indictment. Conduct far more egregious, while beyond the bounds of proper conduct by the prosecutor, has been found insufficient to require dismissal of the indictment. *See, e.g., Laughlin v. United States*, 385 F.2d 287, 292 (D.C.Cir.1967) (prosecutor made reference to allegation made by defendant that another witness was a prostitute), *cert. denied*, 390 U.S. 1003, 88 S.Ct. 1245, 20 L.Ed.2d 103 (1968); *United States v. Bruzgo*, 373 F.2d 383, 386–87 (3d Cir.1967) (prosecutor made threats or used abusive language toward a grand jury witness). *Compare United States v. Gallo*, 394 F.Supp. 310, 315–16 (D.Conn.1975) (indictment dismissed where prosecutor guilty of a num-

---

**7.** The court of appeals has found that the government abused the grand jury process by issuing a grand jury subpoena to Payden's lawyer. *In re Grand Jury Subpoena Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26 (2d Cir.1985). Such abuse, however, is not so egregious as to warrant dismissal of the indictment. See cases cited in text at 812. In any event, no indictment was filed as a result of this abuse as the subpoena was quashed.

**8.** In *in re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Robert M. Simels, Esq.)*, 767 F.2d 26 (2d Cir.1985), Payden argued that the Grand Jury subpoena issued to his attorney should have been quashed based on "prosecutorial vindictiveness." The court of appeals did not find any support for this claim in the record. *Id.* at 30 n. 2.

ber of errors, including failure to tell second grand jury that transcripts of testimony before first grand jury contained perjurious statements and failure to provide full and complete record of proceedings before first grand jury); *United States v. Wells*, 163 F. 313 (D.Idaho 1908) (indictment dismissed where prosecutor entered grand jury room during deliberations and expressed his personal opinion that the evidence established guilt and urged the grand jury to indict). Moreover, in *United States v. Bari*, 750 F.2d 1169 (2d Cir.1984), the Second Circuit held that Rule 403 of the Federal Rules of Evidence does not apply to grand jury proceedings. The court stated: "The admission of evidence within the realm of colorable relevance is not misconduct calling for the extreme remedy of dismissal of the indictment even if the prejudicial effect of such evidence outweighs its probative value." *Id.* at 1177. Accordingly, the motion to inspect the Grand Jury minutes and to dismiss the indictment based on misconduct occurring before the Grand Jury is denied.

## III. SUPRESSION OF EVIDENCE: CLAUDINE JONES WIRETAP, PAYDEN WIRETAP AND SEARCH OF PAYDEN'S HOME.

### A. *Jones Wiretap.*

 Payden seeks to suppress evidence obtained from a wiretap of Claudine Jones' ("Jones") telephone. Jones is an alleged co-conspirator of Payden. The court need not address the substance of Payden's objections to the Jones wiretap. Payden has no standing to contest this wiretap. The mere fact a search produced evidence which is to be used against the defendant is not enough to confer standing under the Fourth Amendment. In order to contest a wiretap, the party must show that either their phone was tapped or their conversations were intercepted. *United States v. Magaddino*, 496 F.2d 455, 460 (2d Cir.1974). Payden does not fall within either of these categories. The Jones wiretap was not on Payden's phone. Moreover, Payden was not a party to any of the

conversations the government intends to introduce from the Jones wiretap.

Payden contends that he has standing to contest the wiretap under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520. The statute permits "aggrieved persons" to contest a wiretap. 18 U.S.C. § 2518(10)(a). Aggrieved persons are those that have participated in the intercepted conversations or those with an interest in the premises where the wiretap was installed. *United States v. Bynum*, 513 F.2d 533, 535 (2d Cir.), *cert. denied*, 423 U.S. 952, 96 S.Ct. 357, 46 L.Ed.2d 277 (1975); *in re Flanagan*, 533 F.Supp. 957, 960 (E.D.N.Y.), *rev'd on other grounds*, 691 F.2d 116 (2d Cir. 1982). Therefore, standing under Title III is not broader than that under the Constitution in the situation presented here. *See United States v. Dorfman*, 690 F.2d 1217, 1227 (7th Cir.1982). The motion to suppress the conversations intercepted by the Jones Wiretap is denied, based on Payden's lack of standing.

### B. *Payden Wiretap and Search— Franks Hearing.*

 Payden contends that the affidavits supporting the warrants to search his apartment and to install a wiretap on his phone contain false statements by the agents and that the warrants are therefore invalid. Payden seeks a hearing, pursuant to *United States v. Franks*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to challenge the search warrant and wiretap of his phone. Under *Franks*, the defendant must make a substantial preliminary showing that a false statement, made knowingly or intentionally or with a reckless disregard for the truth, was included in the affidavits supporting the wiretap and the search. Further, these statements must be necessary for a finding of probable cause. *Id.* at 155–56, 98 S.Ct. at 2676–77. Only if this showing is made will a hearing be required. At a hearing, the defendant must show by a preponderance of the evidence that the misrepresentations

were made with the requisite intent to void the warrants.

 Payden emphasizes a number of inconsistencies and falsehoods in the government's affidavit supporting the complaint in this case, the complaint in the Jones case,[9] the search warrant affidavit and the Jones and Payden wiretap affidavits. For example, the government included in the affidavits conversations, initially described as involving narcotics, which the government now admits involve "numbers." There are also inconsistencies regarding Claudine Jones' role in the operation. Payden also cites an intercepted conversation between Jerry McGee, another alleged co-conspirator, and Jones referring to a telephone number that the government agent asserts in the Payden wiretap affidavit belongs to Payden. The number, according to Payden, is not similar to any other number brought to light in the investigation. A final example is that a number of calls picked up on a pen register attributed to a narcotics number were, according to Payden, calls to a "policy" establishment.

A *Franks* hearing is not required where probable cause is found when the alleged false statements are excluded. *United States v. Ferguson*, 758 F.2d 843, 848–49 (2d Cir.1985); *Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir.1980), *cert. denied*, 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 353 (1981). The existence of probable cause in a given case is determined by reference to the totality of circumstances as set forth in the affidavits presented to the judicial officer issuing the search warrant or wire tap. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause is a " 'practical nontechnical conception,' " *United States v. Young*, 745 F.2d 733, 758 (2d Cir.1984) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)), which requires that warrants be read in a common sense manner. *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). In this case, even when the alleged false statements are excluded, there was reasonable cause to believe there was evidence in the locations specified in the search warrant, *see Zurcher v. Stanford Daily*, 436 U.S. 547, 556–57, 98 S.Ct. 1970, 1976–77, 56 L.Ed.2d 525 (1978), based on intercepted telephone conversations and information provided by informants.[10]

In addition, the court finds that the defendants have failed to make a substantial preliminary showing that the cited inconsistencies were made knowingly or intentionally or with a reckless disregard for the truth. The inconsistencies are relatively minor when compared to the total statements made by the agents, and thus are not in the nature of statements made intentionally or with reckless disregard for the truth. *See United States v. Gomez*, 495 F.Supp. 992, 1011–12 (S.D.N.Y.1979), *aff'd*, 633 F.2d 999 (2d Cir.1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 194 (1981).[11]

---

9. On September 7, 1983, Claudine Jones pled guilty before Judge Henry F. Werker to conspiracy to distribute narcotics and distribution of narcotics. *United States v. Jones*, S 83 Cr. 446 (HFW).

10. Payden also contends that the information relied upon by the agent who swore out the affidavit for the search warrant was stale. This argument is rejected. When the affidavit describes a continuing course of illegal conduct, the passage of time between the last described act and the application for the warrant becomes less significant. *United States v. Castellano*, 610 F.Supp. 1359, 1437 (S.D.N.Y.1985); *United States v. Kuntz*, 504 F.Supp. 706, 709 (S.D.N.Y. 1980).

11. By letter dated April 3, 1985, Payden cites *United States v. Boyce*, 601 F.Supp. 947 (D.Minn. 1985) in support of the proposition that once the reviewing court finds the search warrant affidavit to be dishonest or reckless, suppression is appropriate regardless of whether the misrepresentation or omission would be considered material. In *Boyce*, the court found that the agent "recklessly disregarded the truth in the preparation of his search warrant affidavit and that the judge issuing the warrant was misled as a result." *Id.* at 954. Thus, *Boyce* is distinguishable, because in this case there is no basis for a finding that the agents acted recklessly. Moreover, to the extent that *Boyce* rejects the materiality requirement, it is contrary to the Supreme Court's express holding in *Franks* and the Sec-

Finally, the magistrate's "finding of probable cause is entitled to substantial deference." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir.1983). Thus, in any close case, doubts are to be resolved in favor of the finding made by the magistrate. *Id.* Here, while the court does not consider this to be a close case, the magistrate's finding is "a substantial factor tending to uphold the validity of [the] warrant." *Id.* The motion for a *Franks* hearing is therefore denied.

### C. *Payden Search—Scope of the Search Warrant.*

Payden contends that the agents obtained evidence from his apartment that was beyond the scope of evidence authorized by the search warrant. The warrant authorized a search of the premises at 649 Beach Avenue and seizure of:

> Quantities of heroin and other controlled substances, residue of heroin and other controlled substances, non-narcotic chemical substances, equipment, handguns, ammunition and other weapons, utensils, paraphernalia containers, money, notes, documents, papers, photographs and other evidence of a conspiracy to distribute and of the distribution of narcotic drug controlled substances.

■■■■ Payden contends that photographs seized from the apartment are beyond the scope of the warrant and should be suppressed. Payden relies on *United States v. Young*, 745 F.2d 733 (2d Cir. 1984), to support his contention that the photographs should be suppressed. Payden focuses on the section of the warrant that permits seizure of "other evidence of a conspiracy to distribute and of the distribution of narcotic drug controlled sub-

stances." Payden contends that this "boilerplate" language does not support the seizure of the photographs. This argument is rejected. In *Young*, the warrant stated that "other evidence of a conspiracy" could be seized. The court stated that "boilerplate" language in the warrant would not support the seizure of photographs. Unlike the warrant in *Young, supra*, 745 F.2d at 758, the warrant in this case specifically includes photographs among the concealed property that may be seized. Thus, the "boilerplate" language is not being used to support the seizure of the photographs. The motion to suppress the photographs is therefore denied.[12]

■■■■ Payden also contends that the search of his mother's apartment, also at 649 Beach Avenue, was beyond the scope of the warrant. A warrant describing a multi-unit dwelling as the place to be searched that fails to specify a particular sub-unit may be voided. *E.g.* *United States v. Hinton*, 219 F.2d 324 (7th Cir. 1955). Payden alleges that the agents knew that the apartments were separate and that the separate apartment was not within the scope of the warrant. Payden contends that because he and his mother have separate telephones and because upon entering 649 Beach Avenue it becomes apparent the two apartments have distinctly separate entrances, the search should not have been extended to the upstairs apartment.

This is not a typical case where the defendant does not have access to all the separate living units, 2 W. LaFave, Search and Seizure § 4.5, at 78 (1978), and thus Payden's reasoning is not persuasive. The fact that Payden and his mother had sepa-

ond Circuit's recent decision in *United States v. Ferguson*, 758 F.2d 843, 848–49 (2d Cir.1985).

**12.** Payden seeks the return of certain property seized from 649 Beach Avenue that the government will not use at trial. The government admits that "[o]bviously, certain items, *e.g.* Lotto tickets, will not be used as trial evidence." The government offers to return these items upon the completion of trial. June 12, 1985 affidavit of Assistant United States Attorney Car-

roll ¶ 8. There is no need for the government to retain these obviously irrelevant items until the completion of trial. The government is to return these items within ten days of this opinion.

Payden also seeks to have various items seized from his apartment returned to third persons who Payden claims are the owners of the seized items. There are established procedures for the return of property that may be followed by these third parties. *See* Fed.R.Crim.P. 41(e).

rate phones does not mean that the two apartments were distinct. Payden gave his probation officer his mother's phone number as his own. Affidavit of Marvin Siegel in Support of Wiretap at ¶ 16.[13] The phone which was situated in Payden's apartment was listed in the name of Payden's girlfriend, Adrian Bowden, 649 Beach Avenue. *Id.* Thus, there is probable cause to believe that the two apartments had separate phones, not because they were separate entities, but because Payden needed one legitimate phone number and another number to conduct his illicit activities.

Moreover, although there may be two housing units at 649 Beach Avenue, the fact that Payden had access to his mother's phone indicates that he had access to his mother's apartment. Payden also had been seen driving a Mercedes Benz automobile which was registered in his mother's name. *Id.* at ¶ 13. Because Payden had established a practice of using his mother's property and because he had access to his mother's apartment, there was sufficient probable cause for extension of the search to his mother's apartment. *See United States v. Whitten,* 706 F.2d 1000, 1008 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). Further, Payden offers no evidence to support his contention that the agents knew of the multi-unit character of the premises. *See United States v. Whitney,* 633 F.2d 902, 907 n. 3 (9th Cir.1980), *cert. denied,* 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981). Under these circumstances the search was not beyond the scope of the warrant which on its face authorized a search of the entire premises of 649 Beach Avenue.

## IV. BILL OF PARTICULARS.

 It is within the discretion of the trial judge to determine whether a bill of particulars must be filed and its scope.

*United States v. Cohen,* 518 F.2d 727, 734 (2d Cir.), *cert. denied,* 423 U.S. 926, 96 S.Ct. 271, 46 L.Ed.2d 252 (1975). That discretion must be informed, however, by certain well established considerations: whether the requested particularization is necessary to a defendant's preparations for trial and to the avoidance of unfair surprise at trial. *United States v. Kendall,* 665 F.2d 126, 134 (7th Cir.), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1981); *United States v. Raineri,* 91 F.R.D. 159, 160 (E.D.Wis.1981).[14] It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case. The court must be cognizant of the fact that a bill of particulars confines the government's evidence at trial to the particulars furnished. *United States v. Boffa,* 513 F.Supp. 444, 484–85 (D.Del. 1980). "Thus, the Court is required to balance restricting the Government's proof against protecting defendants from surprise." *Id.* at 485.

 The bill of particulars may not be used for the purpose of discovering the government's evidence, *United States v. Hilliard, supra,* 436 F.Supp. at 76, however, if the defendant demonstrates the requisite necessity for the information, the bill must be granted, regardless of whether it will result in the disclosure of the government's evidence. *United States v. Cimino,* 31 F.R.D. 277, 279 (S.D.N.Y.1962). In deciding whether the bill of particulars is needed, the court must determine whether the information sought has been provided elsewhere, such as in other items provided by discovery, responses made to unobjected requests for particulars, prior proceedings, and the indictment itself. *See* 1 C. Wright, Federal Practice and Procedure (Criminal) § 129 (2d ed. 1982).

---

**13.** Officer Cynthia Jovanelly, who swore out the affidavit in support of the search warrant, was assisted by agent Siegel.

**14.** Many cases also recite a third function, that of protecting the "defendant against the threat of double jeopardy." *See, e.g., United States v. Hilliard,* 436 F.Supp. 66, 76 (S.D.N.Y.1977).

This, however, does not "add anything to the functions previously described," 1 C. Wright, Federal Practice and Procedure (Criminal) § 129, at 436–37 (2d ed. 1982), and is, in any event, satisfied by the indictment in this case. *See supra* note 2.

Payden seeks from the government a list of items pertaining to the conspiracy count.[15] As a general rule, the defendant does not "need" detailed evidence about the conspiracy in order to prepare for trial properly. *United States v. Wilson*, 565 F.Supp. 1416, 1438–39 (S.D.N.Y.1983); *United States v. Cullen*, 305 F.Supp. 695, 699 (E.D.Wis.1969); *see, e.g., United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir.1981). This need is especially lacking where, as in this case, the indictment sets forth nine overt acts allegedly committed in furtherance of the conspiracy. Because the government is not required to charge any overt acts in the indictment, the information provided on the face of count one is, itself, more than Payden has a right to demand. *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979); *see United States v. Wilson, supra*, 565 F.Supp. at 1438–39; *United States v. Johnson*, 524 F.Supp. 199, 207 (D.Del.), *rev'd on other grounds*, 690 F.2d 60 (3d Cir.1981), *cert. denied*, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 450 (1983). Moreover, the government has provided defendants with a great deal of discovery, including all the taped conversations, the items seized in searches of the apartments of Payden and his co-conspirators, and the lab reports on the items seized. In addition, there have been numerous pretrial motions and hearings in this case, which have given Payden the opportunity to obtain further information as to the government's case.

There are additional reasons warranting a denial of the bill of particulars. Because the government is entitled to prove a conspiracy through the use of circumstantial evidence, disclosure of the type of information Payden seeks would unduly limit the government's proof at trial. *United States v. Goldman*, 439 F.Supp. 337, 352 (S.D.N.Y.1977). Moreover, defendants have not articulated any specific need for the information, but have only referred the court to other cases in which similar information has been provided. *Cf. United States v. Orsini*, 406 F.Supp. 1264, 1265 (E.D.N.Y.1976) (defendant's request for enhanced degree of specificity as to overt act in the indictment granted where the defendant indicated that the information was necessary for the preparation of an alibi defense). The information requested by the defendants might be helpful in their prepa-

---

**15.** In October, 1984, Payden requested from the government the following items pertaining to the conspiracy which were denied:

a. specific place and time where the conspiracy is alleged to have begun;

b. specific place and time when the conspiracy is alleged to have terminated;

c. whether it is alleged that the defendant was a participant in the alleged conspiracy throughout the conspiracy's existence. If not, set forth the dates of his alleged participation;

d. the names of all "others" with whom the defendant allegedly conspired.

On January 22, 1985, Payden sought a court order to direct the government to provide additional particulars related to the conspiracy count. A request for this information was not first directed to the government as required by Rule 16. The information sought in the second list is:

a. any additional co-conspirators not named in paragraph 1 of count one known to the government or to the grand jury;

b. state, with as much precision as possible, the amount of heroin and/or cocaine which the defendant Payden allegedly conspired to possess, state where the defendant allegedly conspired to possess said amount of heroin and/or cocaine, and state when such alleged possession and distribution was to take place pursuant to the alleged conspiracy;

c. identify the additional venues in which the alleged conspiracy took place;

d. whether ... the defendant Payden is alleged by the government to have conspired outside of the boundaries of the Southern District of New York and if so, identify such other places by describing their location and the dates of such alleged conspiratorial acts;

e. whether the government claims that the defendant actually possessed heroin and/or cocaine in the alleged conspiracy and, if so, identify the dates and places of such alleged possession(s);

f. whether or not the government alleges that the defendant Payden constructively possessed any heroin or other alleged controlled substances during the course of the alleged conspiracy and, if so, identify the dates and places of such alleged possession(s);

g. whether the defendant Payden is alleged to have been a member of the Claudine Jones/Jerry McGee conspiracy;

h. As to Overt Act No. 1 of Count One, state when said heroin was given to Claudine Jones's husband and the amount tendered.

ration of the defense, but the court finds that it is not *necessary* for such preparation. The request for a bill of particulars as to the conspiracy count is therefore denied.

■■■■■ Payden also seeks particulars pertaining to the § 848 count.[16] First, defendant seeks identification of the violations that allegedly underlie the § 848 charge. In order to establish a "series of violations" under Section 848, the government must prove three violations. Payden seeks specification of the dates, times and places of the violations that allegedly constitute the "series." Payden, however, has been provided sufficient information, both in the indictment and in other discovery material provided by the government, of events constituting more than three violations of the narcotics laws. The request is therefore an effort to pin the government down to specific violations to be proved at trial, which is not proper grounds for granting a bill of particulars. Payden has ample notice as to what constitutes the "series" of violations.[17] *See United States v. Sperling*, 506 F.2d 1323, 1344 (2d Cir. 1974) (indictment was not legally insufficient for failure to specify names of persons defendant organized or to specify each violation comprising the "series," where the indictment tracked the statutory language and defendant was provided with a bill of particulars which identified eight persons as to whom he occupied a position of organizer, manager, or supervisor), *cert.*

*denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975).

Payden seeks the names of the persons that he allegedly "organized." The government must prove that defendant organized at least five people. The defendant is not entitled to this information, where the indictment and other information puts defendant on notice as to the identity of the other actors. *United States v. Hawkins,* 661 F.2d 436, 452 (5th Cir.1981), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2274, 73 L.Ed.2d 1287, 459 U.S. 832, 103 S.Ct. 72, 74 L.Ed.2d 71 (1982). In this case, Payden has been given ample notice as to the other persons the government will attempt to prove were members of the enterprise. Moreover, the government has submitted, *in camera,* an affidavit setting forth the reasons why disclosure of the names of co-conspirators and members of the enterprise would be dangerous. Under these circumstances, Payden's request is denied.

Payden further requests the government to state specifically the nature of the "substantial income and resources" which the government claims defendant derived from the enterprise and state when and where such income were specifically acquired. This is an element of the § 848 offense. Payden has been put on notice as to the "income" the government will rely on based on the forfeiture section of the second superseding indictment.

On March 13, 1985, Payden filed a supplemental pre-trial motion in which he

---

**16.** Payden seeks the following particulars respecting the § 848 count:

whether the conspiracy charge in Count One and the charges contained in Count Three are the predicate acts required under the 848 charge contained in Count Two, or are there other additional uncharged matters which constitute the predicate acts;

the names of the five or more persons referred to in said count with respect to whom the defendant occupied a position of organizer, supervisor and manager;

the dates, times and places of the violations alleged as part of the "series of violations" alleged in that count;

describe with particularity the "enterprise"; the nature of the "substantial income and resources" which the government claims the defendant derived from the alleged continu-

ing criminal enterprise, and state when and where such income and/or were specifically acquired;

the nature of property the government seeks to forfeit pursuant to Count Two.

This last request, in effect, has been answered by the government's filing of the second superseding indictment on February 25, 1985, which sets forth a detailed list of the items the government seeks through forfeiture.

**17.** Payden also seeks a specific description of the "enterprise." Based on the information already available to the defendant, he has sufficient notice as to the facts constituting the "enterprise." The production of any further information can only be for the purpose of discovering the government's theory which is not the function of a bill of particulars.

seeks detailed information regarding the items the government lists for forfeiture in the second superseding indictment.[18] Payden only contends that this information is "important" to his trial preparation. Payden, however, has adequate notice of the items the government seeks. Any other information regarding the items is not "necessary" to Payden's trial preparation.

■ Defendant Grant is named as a co-conspirator in Count One. Overt Act nine charges that "on or about July 19, 1984, ... Grant ... offered to sell heroin to an agent of the Drug Enforcement Administration acting in an undercover capacity." This is the only reference to Grant in the indictment. With respect to this charged overt act, Grant seeks particulars specifying the exact time, location and persons present at the time of the alleged transaction. The government is ordered to pro-

vide Grant, at least 48 hours prior to trial, with the name of the drug enforcement agent listed in overt act nine or sufficient information to enable Grant to identify the agent.

## V. DISCOVERY

■ Payden requests discovery of a variety of items. Many of the requests are made without even a shred of support. While the court has discretion to order discovery beyond that required by the Federal Rules of Criminal Procedure, the court has considered these requests and limits discovery to that required by the Federal Rules of Criminal Procedure.[19]

### A. *Defendants' Oral Statements made to, or overheard by, officers before or after arrest.*

■ Defendants seek discovery of oral statements made by them to, or overheard

---

**18.** Payden seeks the dates of acquisition by defendant of the automobile and each item of the jewelry listed and the registered owner of the automobile listed.

**19.** Payden makes a very detailed request for discovery. The following is a partial list:

a. Any oral statements made by the defendant to, or overheard by, law enforcement officers *prior* to his arrest which are the subject of verbatim or summarized reports or written memoranda by the officers;

b. Any oral statements made by the defendant to, or overheard by, law enforcement officers *after* his arrest which are the subject of verbatim or summarized reports or written memoranda by the officers;

c. Any and all telephone records obtained in connection with the investigation of the above-captioned matter;

d. Transcripts, tapes, or any other memorialization in any form of communication of or between Federal, State or local law enforcement agencies while performing surveillance or undercover investigation;

e. All telephone, telegraph, financial institution, county recorder, motor vehicle or credit union documents, bills, listings, indices, statements, checks, tax returns (state or federal) or similar materials examined, copied, noted or viewed by the government in connection with this case;

f. All hotel, motel, airplane ticket receipts or auto rental receipts claimed by the government to have been made during the course of the conspiracy. Defendant further requests the

dates, times and persons present at all searches for hotel and motel records, the names and addresses of the hotel and motel records [sic], the names and addresses of the hotels and motels that were checked, and the conclusions of the investigating officers as to whether such hotels and/or motels are used during the course of the conspiracy;

g. All telephone records and a toll analysis for:

(1) The residence and telephones used by Donald Payden;

(2) The residence and telephones used by any other co-conspirator, whether indicted or unindicted;

h. All recordings, summaries, breakdowns of tolls or other analysis of phone calls made between any of the alleged co-conspirators;

i. All telephone toll records in the possession of the government which are claimed to reflect telephone calls made during the course of the conspiracy or made by any person claimed to have participated in the conspiracy, whether indicted or not. Defendant also requests that the government furnish a statement of how it came into possession of any such record;

j. All telephone toll records in the possession of the government which were examined because the government had information that they contained records of:

(1) A telephone call placed by defendant Payden;

(2) A telephone call placed to defendant Payden; or

(3) A telephone call placed to or from a location at which defendant Payden was supposed to be, but reflected no such call.

by, officers before and after their arrest. Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure requires disclosure of statements by a defendant that are not written or recorded only if solicited by interrogation and the statements are to be used by the government at trial. Unsolicited oral statements that are not recorded are not discoverable under the Rules. The government asserts that all discovery materials within the scope of Rule 16 have been made available to the defendants.

### B. *Documents.*

■ Payden requests discovery of a number of documents, including telephone and toll records. Payden also seeks discovery of the analysis performed on the toll records. Rule 16(a)(1)(C) permits discovery of documents and tangible objects within the possession, custody or control of the government that are material to the preparation of the defense or are intended for use by the government as evidence in chief at trial or were obtained from the defendant. The government asserts that all physical evidence has been made available to counsel.

The requests for analysis of the toll records and other conclusions of investigating officers is denied. These materials are not discoverable because they are internal government documents made in connection with the investigation of this case. Fed.R. Crim.P. 16(a)(2).

### C. *Prior or subsequent similar acts the government intends to introduce.*

■ Defendants seek disclosure of all prior or subsequent acts the government intends to introduce at trial. Defendants offer no support for this request, but the court will assume the request is based on Rule 12(d)(2) of the Federal Rules of Criminal Procedure. Disclosure of all similar acts is not required under this rule. Only the defendant's prior record, discoverable under Rule 16, need be disclosed. Rule 12(d)(2) is intended "to enable the defendant to file a motion to suppress, not to provide him with information he normally could not discover under Rule 16." *United States v. Climatemp, Inc.,* 482 F.Supp. 376, 391 (N.D.Ill.1979), *aff'd mem.,* 705 F.2d 461 (7th Cir.), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983); *accord* 1 C. Wright & A. Miller, Federal Practice and Procedure (Criminal) § 197, at 737 (2d ed. 1982).[20]

### D. *Defendants' and Co-conspirators' Statements.*

■ Defendants request production of their own statements. Rule 16 entitles the defendants to these statements in certain situations. Defendants are also entitled to production of certain statements of their co-conspirators made during the course of the conspiracy. *United States v. DeFabritus,* 605 F.Supp. 1538, 1548 (S.D.N.Y.1985); *United States v. Turkish,* 458 F.Supp. 874, 882 (S.D.N.Y.1978), *aff'd,* 623 F.2d 769 (2d Cir.1980). However, if the co-conspirator will be a government witness at trial, the defendant is only entitled to discovery of statements of a co-conspirator as required by the Jencks Act and not the broader discovery provided by Rule 16. *United States v. Collins,* 652 F.2d 735, 738 (8th Cir.), *cert. denied,* 455 U.S. 906, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1981).[21]

### E. *Exculpatory material pursuant to Brady.*

■ Under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215

---

**20.** It is within the discretion of the government to disclose evidence of prior bad acts pursuant to Rule 12(d)(1). One court has suggested that the government exercise this discretion so as to permit a ruling on the admissibility of the evidence prior to trial when a more thorough analysis of the issue can be undertaken by the court. *United States v. Foskey,* 636 F.2d 517, 526 n. 8 (D.C.Cir.1980).

**21.** Claudine J. Jones, an alleged co-conspirator, is expected to be a government witness at trial. Payden seeks discovery of the wiretap conducted in the Cleveland area on the ground that Ms. Jones was a participant in the intercepted phone conversation. The government has stated that it is "not aware of any material with reference to Claudine J. Jones contained [in the Cleveland

(1967), the government must disclose information that is: (1) material, i.e., evidence that might affect the outcome of trial; and (2) obviously exculpatory. Under Rule 16, the government must disclose information provided: (1) the request is specific; (2) the information falls within the parameters of the rule, although it may be nonexculpatory as well as exculpatory; and (3) the request is reasonable. Thus, the government has an obligation to produce all exculpatory material. The question is the timing of the disclosure. The material must be disclosed in time for the effective use of the material at trial. *United States v. Higgs,* 713 F.2d 39, 43–44 (3d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 725, 79 L.Ed.2d 185 (1984). At oral argument of these motions, the government stated that disclosure of *Brady* material would be made three days before the testimony of a witness.[22] At oral argument the court informed the defendants that if this period of time proves to be inadequate for the effective use of the information, the court will consider an adjournment to allow defense counsel to prepare.

### F. *Witness list.*

▮▮▮▮▮ Payden seeks to have the government furnish a witness list. There is no obligation to provide a witness list and it is within the court's discretion whether to require the government to do so. The defendant is entitled to the government's witness list if "disclosure [is] both material to the preparation of the defense and reasonable in light of the circumstances surrounding [the] case." *United States v. Cannone,* 528 F.2d 296, 301 (2d Cir.1975). There are a number of factors which affect this decision:

(1) Did the offense alleged in the indictment involve a crime of violence?

(2) Have the defendants been arrested or convicted for crimes involving violence?

(3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)?

(4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial?

(5) Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult?

(6) Do the defendants have limited funds with which to investigate and prepare their defense?

*United States v. Turkish, supra,* 458 F.Supp. at 881; *see generally United States v. Price,* 448 F.Supp. 503, 508–18 (D.Colo.1978) (court reviews Second Circuit cases regarding disclosure of witness lists as well as cases from other circuits). The government has submitted an affidavit for an *in camera* review by the court of the factors relating to disclosure of a witness list. The court finds that the pre-trial disclosure of the complete witness list to the defendants is not required. The name of a government witness will be disclosed three days prior to the testimony of that witness.

### G. *Disclosure of information about the witnesses in advance of trial.*

▮▮▮▮ Payden seeks information regarding promises, threats or bargains struck by the government with its witnesses, particularly those reached with Claudine Jones,

---

wiretap] that need be turned over now or at any other time." The Assistant United States Attorney has further stated that he has "personally consulted with agents of the Drug Enforcement Administration to determine this fact." The government is, of course, aware of its obligations under *Brady* and 18 U.S.C. § 3500. Whether the government fulfills this responsibility is a matter the court can only determine after trial. *United States v. Vinieris,* 595 F.Supp. 88, 91 (S.D.N.Y.1984).

**22.** The government also stated that it would disclose all material defendants are entitled to pursuant to 18 U.S.C. § 3500 three days prior each witness' testifying. The statute only requires that such material be provided after the government's witness has testified on direct. 18 U.S.C. § 3500(b).

822

one of the government's informers. This information relates to the credibility of witnesses. Under *Brady*, such information must be disclosed, *United States ex rel. Marzeno v. Gengler*, 574 F.2d 730, 735 (3d Cir.1978), but because it only goes to credibility, it need not be disclosed until the eve of each witness' testifying. *United States v. Deaton*, 448 F.Supp. 532, 538 (S.D.Ohio 1978); *United States v. Sherman*, 426 F.Supp. 85, 91–92 (S.D.N.Y.1976). The government has asserted that it will deliver *Brady* material three days prior to the testimony of each witness. This satisfies the government's obligation under *Brady*.

H. *List of premarked exhibits.*

■ The defendants seek to have the government provide a list of premarked exhibits two weeks in advance of trial. This request is governed by Rule 16(a)(1)(C), regarding disclosure of documents under the control of the government. *See Turkish, supra,* 458 F.Supp. at 882. In *Turkish,* the court ordered the government to identify those documents which it intended to offer at trial, or use in connection with testimony of any witness. In contrast to *Turkish,* which involved 2,500 documents, this case involves mostly tape recordings and transcripts. The government has provided documents, recordings and transcripts as well as a list of pertinent recordings and need not supply a list of the documents that will be used.

I. *Disclosure of Informants.*

■ Payden seeks an order compelling the government to disclose the name of an informant. The informant was relied on by the officers whose affidavits supported the search warrant of Payden's home and Payden's arrest warrant. The motion is denied.

The defendant bears the burden of demonstrating entitlement to this information. *In re United States,* 565 F.2d 19, 23 (2d Cir.1977), *cert. denied,* 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978). There is no hard and fast rule for disclosure. As the Supreme Court held in *Roviaro v.*

*United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957), the interests of the defendant in obtaining the information must be weighed against the government's desire to encourage the free flow of information from its citizens. In this regard the Second Circuit has observed that:

the Supreme Court has indicated that the most persuasive case for disclosure is where the examination of the informant is necessary to vindicate a defense on the merits and where the withholding of the information will thereby compromise the truth-finding function of the trial. Conversely, the Supreme Court has observed that the need for disclosure is far less compelling when it is sought in connection with pre-trial issues, such as the propriety of search or seizure, which do not bear upon the ultimate question of guilt or innocence.

*United States v. Manley,* 632 F.2d 978, 985 (2d Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

Payden seeks the identity of the informant for use at a *Franks* hearing. Thus, the need for disclosure is not compelling. Further, the informant will not testify at trial because, according to the government, the informant is no longer alive. Under these circumstances, the court finds that Payden has not demonstrated a sufficient basis to require disclosure of the informant's identity.

J. *Interceptions of defendants' conversations.*

■ Payden moves the court to order the government to declare whether any interception has ever been made of a conversation to which the defendant was a party. The defendant is entitled to discovery of any *relevant* recorded statements made by him that are within the custody or control of the government, the existence of which is known, or, by the exercise of due diligence, may become known to the government. Fed.R.Crim.P. 16(a)(1)(A). The government asserts that it has disclosed any such conversations that would fall within Rule 16. *See United*

*States v. James,* 495 F.2d 434, 435–36 (5th Cir.), *cert. denied,* 419 U.S. 899, 95 S.Ct. 181, 42 L.Ed.2d 144 (1974).

 K. *Declaration of intent to use hearsay statements, pursuant to Fed.R. Evid. 803(24) or 804(b)(5) and production of hearsay statements which the government will introduce, pursuant to Fed.R.Evid. 801(d)(2), (C), (D) and (E).*

 Payden seeks an order directing the government to declare its intention to use hearsay statements pursuant to Rules 803(24) or 804(b)(5) of the Federal Rules of Evidence. The Rules of Evidence provide that statements under these two rules may not be admitted unless "the proponent of it makes known to the adverse party sufficiently in advance of trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant."

Any statement to be introduced pursuant to Rule 801(d) of the Federal Rules of Evidence need not be disclosed prior to trial. Objections to the admissibility of such statements are properly raised at trial.

### V. AUDIBILITY OF TAPES.

 Payden seeks a pre-trial determination by the court regarding the audibility of tape recordings to be introduced at trial. The defendant is entitled to a determination regarding the audibility of tapes. *United States v. Bryant,* 480 F.2d 785, 789 (2d Cir.1973). Payden has provided a list of tapes he considers inaudible and the government has provided a list of pertinent tapes. Only one tape appears on both lists. The court has listened to this tape and finds it audible. Should the government seek to introduce any other of the alleged inaudible tapes not on the present list of pertinent tapes, the court will listen to the additional tapes *in camera* and make a determination regarding their audibility at an appropriate time.

### VI. *JAMES* HEARING.

 Defendants request a pre-trial hearing to determine the admissibility of the statements of alleged co-conspirators against them, pursuant to *United States v. James,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). The Second Circuit does not require a *James* hearing. *United States v. Margiotta,* 688 F.2d 108, 136–37 (2d Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *United States v. Castellano,* 610 F.Supp. 1359, 1427 (S.D.N.Y.1985); *United States v. Wilson,* 565 F.Supp. 1416, 1437 (S.D.N.Y. 1983). Rather, the government is permitted to offer out of court statements "subject to connection." *United States v. Stanchich,* 550 F.2d 1294, 1298 (2d Cir. 1977). The determination regarding the admissibility of the evidence may be made at the close of the government's case. *United States v. Margiotta, supra,* 638 F.2d at 136–37.

### VII. ALIASES IN THE INDICTMENT.

 Payden seeks to have the aliases "Country," "Fat Country," and "Fats" stricken from the indictment as prejudicial. Payden further contends that the aliases constitute surplusage and should be stricken, pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure. This motion is denied.

An alias may be struck from an indictment if it does not serve a useful purpose, such as identifying the accused or protecting him from double jeopardy. *United States v. Beedle,* 463 F.2d 721, 725 (3d Cir.1972). Where there is an issue as to the defendant's identity, the inclusion of an alias in an indictment is not prohibited. *United States v. Clark,* 541 F.2d 1016, 1018 (4th Cir.1976) (per curiam); *see United States v. Grayson,* 166 F.2d 863, 867 (2d Cir.1948) (Hand, J.); *United States v. Castellano, supra,* 1428. Further, the fact that the inclusion of the aliases may be prejudicial is not sufficient to strike them from the indictment. If evidence is admissible and relevent to the charge, the items

in the indictment will not be stricken no matter how prejudicial. *United States v. Chas. Pfizer & Co.,* 217 F.Supp. 199, 201 (S.D.N.Y.1963).

Payden also contends that the inclusion of the aliases in the indictment will result in the jury being told by the Court that the defendant is "Country" as an uncontroverted fact. This is simply incorrect. The jury in this case will be charged that the indictment is not evidence and merely accuses the defendant. This instruction will alleviate the problems posed by the defendants. *United States v. Humphrey,* 696 F.2d 72, 75 (8th Cir.1982), *cert. denied,* 459 U.S. 1222, 103 S.Ct. 1230, 75 L.Ed.2d 463 (1983); *United States v. Jones,* 587 F.2d 802, 805 (5th Cir.1979) (per curiam).

## CONCLUSION

The defendants' pretrial motions are granted in part and denied in part as set forth herein.

The government is ordered to provide defendant Grant, at least 48 hours prior to trial, with the name of the drug enforcement agent referred to in overt act nine or sufficient information to enable Grant to identify the agent. The government is further ordered to disclose the name of each witness, and provide any *Brady* and Section 3500 material relevant to that witness, three days prior to the witness' testifying.

The government is further ordered to return to Payden all materials that it admits are unrelated to the trial in this case, such as Lotto tickets.

As to all other matters, defendants' motions are denied.

SO ORDERED.